## Appeal of Brown *et al.*

1. A preliminary injunction should not be granted except in a clear case of right, to prevent irreparable mischief.

2. When there are disputes as to rights under a contract, especially when they involve its *terms*, an injunction should not be awarded till the rights are settled.

3. If a court would set aside an agreement for mutual mistake, it would not enforce specific performance by one party as understood by the other.

4. Property cannot be taken from a defendant and put into the possession of the plaintiff unless by a final decree, after the rights of the parties have been settled.

5. As a general rule, mischief which is susceptible of compensation in damages, is not irreparable.

May 25th 1869, at Harrisburg. Before THOMPSON, C. J., AGNEW, SHARSWOOD and WILLIAMS, JJ. READ, J., absent.

Appeal No. 446, to January Term 1869, from the decree of the Court of Common Pleas of *Schuylkill county:* In Equity.

On the 24th of December 1868, Barnabas Hammett and James Neill, trading as Hammett & Neill, filed their bill against David P. Brown, Edward Silliman, Jacob Huntzinger, The Miners' National Bank, The Miners' Life Insurance and Trust Company, The First National Bank of Mahanoy City, Daniel Focht, Leonard & Squier and J. Oliver Roads.

The bill set out:

1. That the plaintiffs held a judgment in the Court of Common Pleas of Schuylkill county against Miller, Son & Roads, for $33,483.66; that under an execution issued on it, the lease of the Shenandoah City Colliery was levied on and advertised to be sold by the sheriff, on the 14th of December 1867.

2. That on the evening before the sale, the Miners' Bank, the Mahanoy Bank, the Insurance and Trust Company, Focht and Leonard & Squiers (defendants), creditors of Miller, Son & Roads, proposed that the plaintiff and those creditors should purchase the colliery on joint account at the sheriff's sale, so that they might finally obtain satisfaction of their claims; that none of the creditors except the plaintiffs, the Mahanoy Bank and Focht had obtained judgment, and that executions by the Bank and Focht had been issued, but their lien was subsequent to the lien of the plaintiffs' execution.

12 P. F. SMITH—2

3. That the plaintiffs had for a long time before been selling coal in Philadelphia on commission, and sold all the coal produced at the colliery for Miller, Son & Roads, for a commission of 25 cents per ton, which included a guaranty of the sales.

4. That the plaintiffs wishing to aid the other creditors in securing their claims and without any other consideration, on the 14th of December 1867, agreed with them that the colliery should be bought by the parties to the agreement on joint account, all parties to be interested in proportion to their several demands, and further agreed that the plaintiffs should continue to sell the coal from the colliery at a commission of 25 cents per ton as theretofore, with the proviso that if the plaintiffs should not deal fairly in making sales, their right to sell should be determined on 60 days' notice.

5. That in pursuance of the agreement, the colliery was purchased at sheriff's sale by the parties for about $11,000.

6. Sets out the amounts of the respective claims of the parties.

7 and 8. That the purchase-money was paid by all the parties in proportion to their claims, and was all applied to the payment of costs and wages due to miners and laborers; and being insufficient for that purpose, it was necessary to provide as much more as would pay them in full, and the purchasers provided an additional sum of about $10,000.

9. That other sums necessary to make improvements were paid by the parties in proportion to their interests, amounting to about $74,000.

10. That since the sale, the purchasers have worked the colliery under the superintendence of J. Oliver Roads, and by agreement of all parties Silliman was selected as trustee, and Huntzinger and D. P. Brown managers.

11. That since the sale the coal has been sold by the plaintiffs, and they "have well and faithfully discharged their duty and obligations under the contract—and acted fairly in relation thereto, and discharged their agreement with fidelity and to the best practical advantage for the parties."

12. That a notice had been served on the plaintiffs about November 6th 1868, that the contract for the sale by them of the coal at the Shenandoah colliery would be closed in 60 days: that the plaintiffs believe that Brown and Huntzinger directed the notice to be served with the purpose to divert the consignment of the coal and deprive the plaintiffs of their right to sell it.

13. That the complainants had, at great pains and expense, established a reputation and a regular set of customers for the coal, and secured an extensive custom and demand for it; and should the sale be taken from them it would interfere with the business, and not only occasion loss to them as commission merchants, but if the sale should pass to other consignees, similar ex-

pense in securing its reputation and procuring new customers, would be incurred, delay would ensue and loss accrue to all interested.

They prayed that Brown and Huntzinger, as well as the others interested, be restrained by a special injunction till hearing, and perpetual thereafter, from diverting the sale of the coal and delivering it to other parties, and from violating the contract.

On the filing of the bill, on motion of the plaintiffs' solicitors, a rule was granted to show cause why a special injunction should not issue.

The defendants filed an answer on the 6th of January, 1869.

1. They admitted the averments of paragraph 1, but averred that the plaintiffs' judgment was for the protection of the Miners' Bank, the Mahanoy Bank, the Insurance and Trust Company and Henry Heiser, as well as for the plaintiffs.

2. They admitted the averments of paragraph 2, but averred that the arrangement was sought as well by the plaintiffs as by the other creditors.

3. They admitted the averments in paragraph 3, but alleged that, in addition to the commission of 25 cents per ton the plaintiffs made extra charges for travelling expenses, &c.

4. They admitted that there was an agreement at the time set out in paragraph 4, but aver that it was; that Silliman should buy the colliery for the parties to the agreement in proportion to their respective claims, that the plaintiffs should sell the coal at 25 cents per ton commission to cover guaranty and all other charges, that plaintiffs should have the sale of the coal for at least sixty days and afterwards until sixty days' notice from Silliman, that the arrangement was discontinued, and then the parties "might sell to any other persons—open market." They denied that it was any part of the agreement that the plaintiffs' right should cease only on their failing to deal fairly.

5. They admitted that the colliery was bought by Silliman, in trust, as set out in paragraph 5.

6. They were not informed as to the averments in paragraph 6.

7. They averred that the purchase-money, $11,000, is in court for distribution.

8. The wages of miners and laborers have been paid by the parties, and their claims assigned to the parties who paid them.

9. They neither admitted nor denied the averments of paragraph 9.

10. They admitted the averments of paragraph 10.

11. They admitted that the coal had been sold by the plaintiffs since the sheriff's sale, but averred that it had been sold under the agreement as set out in the 4th paragraph of the answer, and not as claimed by the plaintiffs. They denied that the plaintiffs had faithfully discharged their duty under the contract, &c., and

averred that the plaintiffs had acted unfairly, having sold much of the coal below its market value, and had acted so negligently, &c., that the profits for September, October and November had been $50,000 less than they would have been had they acted properly.

12. They admitted that the notice was directed by Brown and Huntzinger, as managers, and that "it is our purpose to divert the course of consignment of the coal from the plaintiffs after sixty days from the service of the notice upon them," but they denied they were violating any contract in so doing.

13. They averred that the coal had a reputation and regular set of customers before the sheriff's sale, that the plaintiffs have been liberally paid for all their pains and expenses, and that no loss will accrue to the parties interested by diverting the sale of coal from them, &c.

14. They averred that the plaintiffs had not in their bill stated such a case as to entitle them to the relief sought for; that their remedy is at law and not in equity.

There were a great number of affidavits taken on each side, both with reference to the terms of the contract, and to the manner in which the plaintiffs conducted the sales. The affidavits were conflicting: an understanding of the case does not require that they should be particularly stated.

Ryan, P. J., delivered the opinion of the court, in which he says: * * *

" Giving equal credit to all the affidavits, it is clear that there is a mutual mistake between the parties to the agreement, which under the defendants' version, upon the part of Hammett & Neill, totally destroys the consideration moving them to enter into the agreement, and which upon the other hand, if the defendants had understood as the complainants did, might have prevented them from entering into the arrangement. I say might have prevented the defendants, because it is not clear that they would not have accepted any reasonable terms Hammett & Neill might have proposed, for they (defendants) would lose nothing, but gain much, by being placed on an equality with Hammett & Neill. The very essential part of this contract, therefore, is the condition in relation to the selling of the coal the product of the colliery, and was most essential to the contract, and the efficient cause of its concoction."

The following decree was made in the case:—

" And now, February 19th 1869, it is ordered and decreed, that a writ of special injunction issue, and until further order of the court, to restrain David P. Brown and Jacob Huntzinger, as managers, and the other respondents in this case, from diverting the sale of coal, hereafter to be mined at the Shenandoah Colliery, in complainants' bill mentioned, and from shipping and de-

livering the product of said colliery to other parties than said complainants," &c.

The defendants appealed to the Supreme Court, and assigned this decree for error.

*W. B. Wells* and *B. W. Cumming*, for appellants.—To justify an injunction in aid of a contract, it must be free from doubt and there must be danger of irreparable injury: Hilliard on Injunction, §§ 2, 23; Morris *v.* Society, 1 Halstead Ch. 203; Brightly's Eq. §§ 303–305; Waring *v.* Cram, 1 Pars. R. 526; Hunter's Appeal, 4 Wright 198; Daughty *v.* Somerville, 3 Halstead Ch. 51; Arnold *v.* Kelpper, 24 Miss. 273; Mammoth Vein Co.'s Appeal, 4 P. F. Smith 188; Cooper *v.* Matheys, 5 Pa. L. J. 40. The bill being contradicted by the answer and affidavits, a preliminary injunction should not issue: Doolittle *v.* Barnitz, 1 Phila. R. 574.

*J. H. Campbell* and *F. W. Hughes*, for appellees.—A majority of partners cannot overrule the minority without notice or consultation: Story on Partnership, §§ 123, 124, note 2.

The opinion of the court was delivered, July 6th 1869, by
WILLIAMS, J.—It is clear, that under the conflicting proofs in this case the complainants were not entitled to a preliminary injunction to enforce the specific performance of the alleged contract. Such an injunction ought never to be granted except in a clear case of right, in order to prevent irreparable mischief. Where there are disputes in regard to the rights of the parties under the contract which is sought to be enforced, especially when the dispute involves, as it does here, the very terms and obligations of the contract, an injunction ought not to be awarded until the rights of the parties are ascertained and settled. The affidavits in this case are in direct conflict, but the preponderance of the proof is clearly in favor of the contract as alleged by the respondents; but if the proof had been so equally balanced as to leave the terms and stipulations of the contract in doubt, this would have been sufficient to have prevented the granting of an injunction: Mammoth Vein Coal Co.'s Appeal, 4 P. F. Smith 183. The court below did not find the contract to be as alleged by the complainants, but came to the conclusion, "giving equal credit to all the affidavits," that the parties misunderstood each other, and that the complainants would not have entered into the agreement if they had understood its terms and stipulations as the respondents did; and that the conflicting proofs disclosed such a case of mutual mistake going to the essence of the contract, as would render it voidable, and relievable in equity. But if a court of equity would set aside the agreement on the ground of the mutual mistake of the parties, it needs no argument to prove that

[Brown's Appeal.]

it would not enforce by injunction its specific performance, by either party as understood by the other. But it is contended that the complainants were entitled to the injunction under the terms of the agreement as alleged and proved by the respondents, because the managers had no authority to discontinue the arrangement by giving the sixty days' notice, and there is no averment in the answer, nor was there any proof, that the parties in interest had authorized the managers to give the notice which they caused to be served on the complainants. But it is plain that the injunction cannot be sustained on this ground. The complainants did not allege as the foundation of the title to the relief prayed for, that the parties in interest had not authorized the notice given by the managers, and therefore, the respondents were not required to aver in their answer that the notice was given by their authority. The answer admits, that the notice was authorized and directed by the managers, as alleged by the complainants, and avers that it is the respondents' purpose and design, to divert the course of consignment of the coal from the complainants, after sixty days from the service of said notice upon them; but the respondents deny that in so doing they shall violate any contract made by them with the complainants, or any of their rights or interests in the pre-- mises. The fair inference from the answer is, that the managers were authorized by the respondents to give the notice which they caused to be served on the complainants. But whether this be so or not, the complainants were not entitled to any injunction on a ground not alleged in their bill. On the complainants' own showing, this is not a case for a preliminary injunction. Its effect is to take the coal mined at the colliery out of the possession and control of the respondents and put it into the possession of the complainants. This can only be done by a final decree after the rights of the parties have been settled : Farmers' Railroad Co. *v.* Reno, Oil Creek and Pithole Railway Co., 3 P. F. Smith 225. Nor is it a case of irreparable mischief. The quantity of coal that may be mined and sold by the respondents between the date of the filing of the bill and the final decree can be easily ascertained, and the complainants' damages arising from the loss of commissions on the sale thereof can be readily estimated. As a general rule, mischief or damage, which is susceptible of compensation in damages, is not irreparable : Rhodes *v.* Dunbar, 7 P. F. Smith 274. The injunction must therefore be dissolved.

And now, to wit, July 6th 1869, it is ordered, adjudged and decreed, that the special injunction against David P. Brown and Jacob Huntzinger, as managers, and the other respondents in this case, ordered by the Court of Common Pleas, be dissolved.