385 A.2d 344

## TOWNSHIP OF SOUTH FAYETTE

v.

## COMMONWEALTH of Pennsylvania and Milton J. Shapp et al., Appellants.

Supreme Court of Pennsylvania.

Argued Nov. 14, 1977.

Decided April 28, 1978.

576

Thomas F. Halloran, Robert J. Winchester, Asst. Attys. Gen., Pittsburgh, for appellants.

Timothy P. O'Reilly, Pittsburgh, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and PACKEL, JJ.

OPINION OF THE COURT

ROBERTS, Justice.

On May 18, 1977, the Commonwealth Court granted appellee Township of South Fayette a preliminary injunction ordering appellant Commonwealth of Pennsylvania to cease operating the Oakdale Intensive Treatment Unit (Oakdale ITU) for juveniles adjudged delinquent. Oakdale ITU is located on a four-acre parcel owned by the Commonwealth within South Fayette Township. The Commonwealth Court, based on *City of Pittsburgh v. Commonwealth*, 468 Pa. 174, 360 A.2d 607 (1976), determined that the Commonwealth's operation of Oakdale ITU violated the South Fayette Township zoning ordinance [1] and that issuance of a preliminary injunction was therefore required. The Commonwealth contends South Fayette Township was not entitled to the preliminary injunction. We agree and vacate. [2]

On May 20, 1977, two days after the preliminary injunction was granted, the Commonwealth filed in the Commonwealth Court notice of appeal from the Commonwealth

1. South Fayette Township, a first class township, pursuant to the Municipalities Planning Code, Act of July 31, 1968, P.L. 805, §§ 101 et seq., 53 P.S. §§ 10101 et seq. (1972), enacted a comprehensive zoning ordinance. The ordinance classified the subject property R–2, which allows such uses as planned unit developments, charitable institutions, clinics, hospitals, sanitoriums, and municipal and civic buildings, including police, fire, governmental, public meeting halls, libraries and museums.

Neither the R–2 classification nor any other classification contained in the zoning ordinance in effect at the time the Commonwealth began occupancy of Oakdale ITU specifically excluded juvenile treatment facilities. On March 5, 1977, after South Fayette Township learned of the Commonwealth's intent to use the property for an intensive treatment unit for juveniles, the Township resolved to amend its zoning ordinance to specifically prohibit a maximum security unit for correctional, penal or treatment purposes in an R–2 Suburban/Residential area and to permit such use in areas zoned as General Industrial. The proposed amendment was enacted on May 9, 1977, and by its terms became immediately effective. This was two days after the Commonwealth began occupancy of Oakdale ITU.

2. We hear this appeal pursuant to the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, art. II, § 203, 17 P.S. § 211.203 (Supp.1977).

Court's decree[3] and applied for supersedeas. The Commonwealth Court granted supersedeas on May 23, 1977. The Commonwealth did not file concurrent notice of appeal in this Court[4] until June 30, 1977. This was after South Fayette Township had, on June 24, filed a motion to dismiss the appeal pursuant to Pa.R.A.P. 1971.[5] This Court directed that argument on South Fayette Township's motion to dismiss the appeal be heard together with the Commonwealth's appeal from issuance of the preliminary injunction.

## I. SOUTH FAYETTE TOWNSHIP'S MOTION TO DISMISS APPEAL

▮ South Fayette Township argues the Commonwealth's appeal should be dismissed under Pa.R.A.P. 1971 because when the Commonwealth filed a timely notice of appeal in the Commonwealth Court, it failed to file concurrent notice with this Court as required by Pa.R.A.P. 907. The Commonwealth admits it inadvertently failed to comply with Rule 907, but contends that dismissal under Pa.R.A.P. 1971 is discretionary and that South Fayette Township has not suffered any harm from this error. We agree.

▮ Within days of learning of its error, the Commonwealth filed notice of appeal in this Court. The case was immediately set for argument during the next session of this Court, and both parties promptly filed records and briefs. South Fayette Township has failed to show that the Commonwealth's failure to file concurrent notice in this Court of its timely appeal filed in the Commonwealth Court was done

3. See Pa.R.A.P. 905(a) which provides that "notice of appeal shall be filed with the clerk of the lower court."

4. See Pa.R.A.P. 907(a) which provides in relevant part:
   "Concurrently with the filing of the notice of appeal under Rule 905 (filing of notice of appeal), the appellant shall transmit to the prothonotary of the appellate court named in the notice of appeal:
   (1) A copy of the notice of appeal."

5. Pa.R.A.P. 1971 provides in relevant part:
   "If the appellant shall fail to file a copy of the notice of appeal with the prothonotary of the appellate court or to pay the docket fee, if a docket fee is required, any appellee may file a motion in the appellate court to dismiss the appeal."

in bad faith or that South Fayette Township had been injured by the Commonwealth's inadvertence. On this record, we do not deem it appropriate to dismiss the Commonwealth's appeal.[6]

## II. COMMONWEALTH'S APPEAL FROM ISSUANCE OF THE PRELIMINARY INJUNCTION

On May 18, 1977, the Commonwealth Court held a hearing on South Fayette Township's motion for a preliminary injunction seeking to enjoin the Commonwealth from operating on property owned by the Commonwealth and located within South Fayette Township an intensive treatment unit for juveniles adjudicated delinquent. Evidence was received on whether the Commonwealth's use of the property created a safety and security problem for residents of South Fayette Township. Following the hearing, the court issued a decree enjoining the Commonwealth "from occupying or using or permitting others to occupy or use the subject property as a unit for juveniles adjudicated delinquent" and directing "all persons [then] occupying said premises as a juvenile detention facility to vacate the same within fourteen days of the receipt of a certified copy of [the] order." The court's Memorandum Opinion concludes that the Commonwealth's use of the property was contrary to the zoning ordinance and therefore that the Township was "entitled to the relief requested under the decision of our Supreme Court in *City of Pittsburgh v. Commonwealth*, 468 Pa. 174, 360 A.2d 607 (1976)."

The scope of appellate review of issuance of a preliminary injunction is limited to determining if any apparently reasonable grounds exist for the action of the court below. *McMullan v. Wohlgemuth*, 444 Pa. 563, 570, 281 A.2d 836, 840 (1971); *Keystone Guild, Inc. v. Pappas*, 399 Pa. 46, 48, 159 A.2d 681, 683 (1960); *Herman v. Dixon*, 393 Pa. 33,

---

**6.** See Pa.R.A.P. 902 which provides in relevant part:
   "Failure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but it is grounds only for such action as the appellate court deems appropriate, which may include dismissal of the appeal."

36, 141 A.2d 575, 577 (1958). In order to sustain a preliminary injunction, the plaintiff's right to relief must be clear, the need for relief must be immediate, *and* the injury must be irreparable if the injunction is not granted. *Keystone Guild, Inc. v. Pappas,* supra. Furthermore, a preliminary injunction containing mandatory provisions which will require a change in the positions of the parties, should be granted even more sparingly than one which is merely prohibitory. *McMullan v. Wohlgemuth,* supra. Based upon this standard of review, we conclude entry of the preliminary injunction was inappropriate and must be vacated.

■ Significantly, the legal issues raised and their application to facts yet undeveloped are sufficiently unclear that South Fayette Township's right to enjoin continued use of the Oakdale ITU is far from clear. The Commonwealth Court and South Fayette Township erred in asserting that this Court's decision in *City of Pittsburgh,* supra, establishes that any land use by the Commonwealth contrary to local zoning ordinances may, without more, justify injunctive relief. To the contrary, *City of Pittsburgh* establishes that applicability of zoning regulations to the Commonwealth depends upon an examination in each case of the nature of the competing legislative grants of authority, the purposes for which these grants were created and the facts of the individual case. Id. 468 Pa. at 182, 360 A.2d at 612. Thus, this Court in *City of Pittsburgh,* faced with the question of whether the Bureau of Corrections could use leased premises in a residential section of Pittsburgh as a ¬re-release center for adult female convicts in contravention of the city's zoning ordinance, examined 1) the authority given the Bureau of Corrections to use leased premises for pre-release centers, Act of July 16, 1968, P.L. 351, § 1, 61 P.S. § 1051 (Supp.1977); 2) the grant of power to a second class city to enact zoning ordinances, Act of March 31, 1927, P.L. 98, § 1, 53 P.S. § 25051 (1957); 3) the specific "Conflict with other laws" provision in the Act giving second class cities zoning authority, Act of March 31, 1927, P.L. 98, § 8, 53 P.S. § 25058 (1957); and 4) the particular circumstances of the case,

including the existence of other suitable sites for establishment of a pre-release center and the "density concerns" of the city. We concluded that the Bureau of Corrections was subject to local zoning regulations in establishing pre-release centers for adult female convicts because 1) the act authorizing the Bureau to establish pre-release centers evidenced no legislative intent to override second class cities' statutory zoning powers; 2) the legislative grant of zoning power to second class cities explicitly directed that zoning regulations shall govern whenever zoning regulations of second class cities impose higher standards than are required in any other statute; and 3) other suitable locations were available to accommodate both the community's interest in low-density residential zoning and that of the Bureau of Corrections in establishing pre-release centers.

■ South Fayette Township's entitlement to injunctive relief is thus far from clear. The Commonwealth Court must determine whether the Commonwealth can fulfill its responsibility as *parens patriae* to provide care and treatment for delinquent children by establishing a facility for fifteen juveniles on four acres of land owned by the Commonwealth within South Fayette Township, a first class township. Resolution of this question depends upon an analysis of 1) whether the Commonwealth's intended use of the property violated the zoning ordinance; 2) the significance of the Commonwealth's ownership of the property; 3) the responsibility of the Commonwealth as *parens patriae*, derived from the Juvenile Act, Act of December 6, 1972, P.L. 1464, § 1, 11 P.S. §§ 50–101 et seq. (Supp.1977), to treat juveniles;[7] 4) the authority to establish juvenile rehabilita-

7. The fundamental purpose of statutes such as the Juvenile Act is to provide treatment, not merely punishment or confinement, of delinquent or deprived children. The state, as *parens patriae*, carries this responsibility. See *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); *Commonwealth v. Fisher*, 213 Pa. 48, 62 A. 198 (1905); *Janet D. Carros*, 240 Pa.Super. 291, 362 A.2d 1060 (1976). One goal of juvenile acts was to remove the delinquent child from the punitive atmosphere of prisons for adults to the rehabilitative atmosphere of an institution which could provide effective treatment and care. *In re Gault*, supra, citing Paulsen, "*Kent v. United States*: The Consti-

tion facilities given the Department of Public Welfare (DPW), Act of June 13, 1967, P.L. 31, § 724, 62 P.S. § 724 (1968); 5) the absence in the first class township zoning authority of a "Conflict with other laws" provision, such as was present in *City of Pittsburgh*, expressly directing that zoning regulations govern; and 6) the particular circumstances of the case.

Moreover, South Fayette Township has made no showing that its need for relief is so immediate or the possibility of irreparable harm so great as to require issuance of this preliminary injunction, partially mandatory in nature. Most of the evidence presented concerned the "irreparable injury" prong of the test for issuance of a preliminary injunction. South Fayette Township introduced evidence concerning incidents occurring on the property when it was operated by the Boy's Industrial Home of Western Pennsylvania, a facility housing up to 350 delinquent and dependent children with no security surroundings. South Fayette Township also discussed three escapes from the facility in 1976 when it was operated by a private trustee and before implementation of the complete security program installed by the Commonwealth. Reports were available for only two of the escapes. They established that one boy was missing for only forty-five minutes and the other one for approximately two hours. South Fayette Township also offered evidence of escapes from the New Castle Youth Development Center, an overcrowded facility located in another county encompassing

tutional Context of Juvenile Cases," 1966 Sup.Ct.Rev. 167, 173–74. In *Nelson v. Heyne*, 491 F.2d 352, 360 (7th Cir.), cert. denied, 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974), where a right to treatment for incarcerated juveniles was upheld on both constitutional and statutory grounds, the court stated:

"In our view the 'right to treatment' includes the right to minimum acceptable standards of care and treatment for juveniles and the right to individualized care and treatment. Because children differ in their need for rehabilitation, individual need for treatment will differ. *When a state assumes the place of a juvenile's parents, it assumes as well the parental duties,* and its treatment for its juveniles should, so far as can be reasonably required, be what proper parental care would provide. Without a program of individual treatment the result may be that juveniles will not be rehabilitated, but warehoused . . . ." (emphasis added.)

intermediate and non-security programs. The Commonwealth Court properly noted the evidence was of limited relevance as there was "no indication any of those escapees are of the same character of the [juveniles] coming [to Oakdale ITU] or the security is the same."

To establish that there was no immediate risk of irreparable injury, the Commonwealth introduced evidence that the Oakdale ITU held fewer juveniles, fifteen, and had superior security than the facilities upon which South Fayette Township's argument was based. The Commonwealth also introduced evidence that since January, 1976, security at the New Castle and Oakdale intensive treatment units were nearly identical and that there were no escapes from the New Castle intensive treatment unit since January, 1976. There were no problems at the Oakdale ITU during the short time the Commonwealth occupied it.

The record shows that the Commonwealth and South Fayette Township held meetings on the issue of the Oakdale ITU, including a meeting in late March, 1977, with Governor Milton Shapp. On April 19, 1977, the Commonwealth informed South Fayette Township by letter of the Governor's decision to approve the juvenile unit at Oakdale ITU upon the conditions that: 1) all security installations be completed prior to occupancy; 2) no more than fifteen juveniles occupy Oakdale ITU at any time; 3) no expansion of the site be considered at any time; 4) adequate staff be maintained at all times; and 5) a citizens' group be formed to monitor the continuing security program at Oakdale, to act as advocate for residents and to ensure DPW's compliance with these conditions. DPW's Director of Security Services for the Western Region testified that, as required, all security requirements had been put into effect prior to occupancy.

■ On these facts, we cannot conclude South Fayette Township has demonstrated irreparable harm constituting reasonable grounds for issuance of a preliminary injunction. South Fayette Township's sole proof of anticipated injury was evidence of incidents occurring months and years before the hearing at facilities operated under different circum-

stances than the Commonwealth's present operation of Oakdale ITU. Since all the most recent evidence established that Oakdale ITU was secure, and South Fayette Township made no showing the problems complained of presently exist, South Fayette Township did not establish the clear right to relief necessary to sustain issuance of a preliminary injunction. See *Zebra v. Pittsburgh School District*, 449 Pa. 432, 439–40, 296 A.2d 748, 751–52 (1972). In *Zebra*, this Court vacated a preliminary injunction enjoining a school district from requiring forty-seven children to attend a certain school, a measure taken to improve racial balance and reduce overcrowding, and requiring provision of other school facilities. This Court concluded that evidence of acts of violence, threats, harassment and intimidation directed against some of the transferred students did not justify issuance of the preliminary injunction, partially mandatory in nature, because, in part, only eleven students testified concerning the complained of acts and the order was based on incidents occurring almost a month earlier, before corrective measures were taken.

Moreover, it seems evident that the Commonwealth would be irreparably harmed by the preliminary injunction. The mandatory provision of the order requiring all persons presently occupying the Oakdale ITU to vacate within fourteen days of issuance of the order would change significantly the status of the parties. The Director of Youth Services testified no other appropriate facilities were currently available in the region to house the juveniles located in Oakdale ITU. Thus, the order would require transfer of Oakdale ITU juveniles to the New Castle facility, where rehabilitation programs were inferior and overcrowded conditions would again be critical.

The combination of the uncertainty of South Fayette Township's right to relief and the absence of a showing of immediate and irreparable harm forcefully militates against issuance of a preliminary injunction, particularly in light of the mandatory nature of some of its provisions. See *Zebra v. Pittsburgh School District*, supra; *McMullan v. Wohlge-*

*muth,* supra. Our review of the pleadings and record developed in the Commonwealth Court at the hearing on the preliminary injunction, leads us to conclude that no adequate grounds exist for issuance of the preliminary injunction. Accordingly, the decree of the Commonwealth Court granting a preliminary injunction is vacated. Each party pay own costs.

PACKEL, J., did not participate in the decision of this case.

EAGEN, C. J., concurs in the result.

POMEROY, J., joins in this opinion and files a concurring opinion.

MANDERINO, J., joins this opinion and the concurring opinion of POMEROY, J.

POMEROY, Justice, concurring.

I join in the decision of the Court. I write this separate statement because of the suggestion in the opinion that the "mandatory" nature of the injunction in this case makes it especially suspect. In my view, the distinction between "mandatory" and "prohibitory" preliminary injunctions is largely illusory and one that we would do well to abandon.

The Commonwealth Court in the instant case ordered in part that the Commonwealth "cause all persons presently occupying said premises [*i. e.,* the Oakdale Intensive Treatment Unit] as a juvenile detention facility to vacate the same within fourteen (14) days of the receipt of a certified copy of this order." This decree is by its terms "mandatory" in that it orders the Commonwealth to take action to remove the residents within a time certain. And this Court has stated that "a mandatory [preliminary] injunction . . . should be issued only in rare cases and certainly more sparingly than one which is merely prohibitory." *Roberts v. School District of Scranton,* 462 Pa. 464, 469–70, 341 A.2d 475, 478 (1975). *Accord, Zebra v. School District of Pittsburgh,* 449 Pa. 432, 437, 296 A.2d 748 (1972); *McMullan v. Wohlgemuth,* 444 Pa. 563, 570, 281 A.2d 836 (1971).

Nonetheless, one may question whether our review of the decree in the case at bar would have been less searching had the court below decreed that the Commonwealth be restrained from keeping juvenile detainees on the premises after a certain time. Such a decree would be, by its terms, merely "prohibitory."[1] Yet I think it clear that such a preliminary injunction would also have to be vacated for the reasons outlined in the Court's opinion. Indeed, the mandatory portion of the Commonwealth Court's decree was merely the obverse of its prohibitory order. The Court first "enjoined [respondent, the Commonwealth] from occupying or using ___ the subject property as a unit for juveniles adjudicated delinquent," and then specified that the implementation of this decree be accompanied by the removal of the occupants of the facility within 14 days." The prohibition could hardly be complied with in any other manner; all that the "mandatory" segment of this decree added was a time limit for compliance.

"The 'mandatory' injunction has not yet been devised that could not be stated in 'prohibitory' terms." *Developments in the Law—Injunctions*, 78 Harv.L.Rev. 994, 1062 (1965). Other respected commendators have been equally critical of the distinction. *See*, 4 J. Pomeroy, Equity Jurisprudence § 1359a, at 970 n.16 (5th ed. J. Symons 1941) ("manifestly absurd"); Z. Chafee, Some Problems of Equity 357 (1950) ("obsolete"). Accordingly, the scope of a chancellor's discretion (and the scope of appellate review) should not turn on such a semantical difference. The distinction appears to lack any historical foundation. *Developments*, supra at 1062; Leubsdorf, *The Standard for Preliminary Injunctions*, 91 Harv.L.Rev. 525, 535 (1978). In addition, it should be candidly acknowledged that neither chancellors nor appellate judges pay much attention to the distinction in practice.

1. So too was Lord Eldon's decree directing a defendant to repair a leaky dam. Rather than order repairs to be made, however, Lord Eldon "prohibited" the defendant from "farther impeding . . . the Plaintiff . . . by continuing to keep the said canals or the banks, gates, locks, or works . . . out of good repair . . ." *Lane v. Newdigate*, 10 Ves.Jr. 192, 193, 32 Eng.Rep. 818, 819 (Ch. 1804).

Even if the decree in this case had been put in "prohibitory" terms, it would be impossible to be ignorant of the fact that the juveniles at Oakdale would have to be moved somewhere. And as the Court properly notes, the closing of the Oakdale unit, even if temporary, might well have worked irreparable harm on the Commonwealth's ability to provide a rehabilitative atmosphere for the juveniles in question.

An analysis of the cases suggests that courts of equity, rather than displaying any firm adherence to the mandatory/prohibitory distinctions, examine the merits of each case and demonstrate a "reluctance to decree burdensome relief without a full hearing." *Leubsdorf, supra,* at 535. That is to say, courts should and do look at the underlying factual and legal controversies to determine both (1) the degree of irreparable harm that may befall either side if equitable relief is granted or withheld, and (2) the probability of success for the plaintiff after a full hearing.[2] See, *e. g., Zebra v. School District of Pittsburgh, supra; McMullan v. Wohlgemuth, supra; Brown's Appeal,* 62 Pa. 17 (1869). See generally, *Cox v. Northwest Airlines, Inc.,* 319 F.Supp. 92, 95–96 (D.Minn.1970), and cases cited therein; *Leubsdorf, supra; Developments, supra,* at 1055–63.

The Court's opinion, however, reflects the kind of examination suggested above, and on this basis I join in it.

MANDERINO, J., joins in this concurring opinion.

**2.** I venture to suggest that we would also do well to abandon the emphasis on the preservation of the status quo as a major factor in granting or withholding preliminary injunctive relief. A court "interferes just as much when it orders the status quo preserved as when it changes it." *Leubsdorf, supra,* at 546. Moreover, this question "eddies off into conundrums about what status is decisive." *Id.* See, *e. g., Roberts v. School District of Scranton, supra,* 462 Pa. at 469 n.1, 341 A.2d 475, *rev'g* 13 Pa.Cmwlth. 464, 320 A.2d 141 (1974). Attention should instead be focused on the degree to which judicial action or inaction would affect the rights of the parties.