## Commonwealth of Pennsylvania v. The Zoning Board of Adjustment

*H. J. Costa, Jr.*, for plaintiff.
*Charles Stokes, Jr.*, for Zoning Board.
*P. Steven Lerario*, for Intervenors.

LORD, *J.*, March 8, 1982—Before this court is an appeal by the Department of Public Welfare of the Commonwealth of Pennsylvania (hereinafter Commonwealth) from a decision by the Zoning Board of Adjustment (hereinafter Zoning Board) preventing

the Commonwealth from erecting a mental retardation center at a particular location in the City of Philadelphia. The zoning board, after conducting two public hearings concerning the proposed site, refused to grant a variance for the proposed center.

The Commonwealth, on appeal, contends that the Mental Health and Mental Retardation Act of 1966 (hereinafter Mental Health Act) gives the Commonwealth the power to place the center at any location it chooses and to do this notwithstanding the local zoning laws. Because the Mental Health Act gives the Commonwealth the power to condemn property, this court concludes that the Commonwealth is immune from local use restrictions.

The Commonwealth seeks to locate the center in a residential district with a zoning classification of "R-9A". Philadelphia Code § 14-203(3)(c). The Philadelphia Code describes the R-9A district as permitting the following uses: attached single family dwelling; and, those uses enumerated in Philadelphia Code § 14-203 including, inter alia, medical and surgical hospitals and centers, nursing homes and schools. See Philadelphia Code § 14-210.1(1)(a) and (b). This court notes that neither party disputes the fact that the proposed center complies with applicable zoning ordinances dealing with the specifics of the construction of the building. Rather, the dispute before the zoning board centered on whether the proposed use was a permitted one.

The record of the zoning board reveals that the Commonwealth seeks to build a two-story building at the northeast corner of Ogontz and Olney Avenues in Philadelphia. The subject property was purchased by the Commonwealth in 1974 for approximately $91,000. The Commonwealth proposes this site as a sheltered workshop and day development center for the mentally handicapped. Additionally,

the Commonwealth seeks to place a 3,000 gallon fuel tank on the property and to surround the subject property with a seven foot high fence with accessory off-street parking.

The procedural history of the matter below is as follows. The Commonwealth filed an application with the Department of Licenses and Inspections of the City of Philadelphia on January 31, 1979 proposing to erect the center, which application was refused on February 21, 1979.

On March 2, 1979, the Commonwealth appealed to the zoning board from the refusal of the permit to erect a two-story building for the mentally retarded. Over the course of the next year two public hearings were held culminating in the zoning board's refusal to grant the variance on March 5, 1980. The Commonwealth appeals from this refusal.

The facts, not completely free from dispute, were set forth by the zoning board in the record below. The subject premises, upon which the Commonwealth seeks to erect the two-story center, is currently owned by the Commonwealth and is a vacant lot. The center contemplates servicing approximately 105 mentally retarded adults, one-half of whom would be coming from the Pennhurst Hospital. As described by the Commonwealth, the center would constitute a Sheltered Workshop and Pre-Vocational Center for the adult clients. The clients would participate in the program at the center from 9:00 am to 5:00 pm Monday thru Friday. During break periods, within the above mentioned time, the clients would be permitted to use the community's surrounding facilities such as the stores, banks, etc.

The area immediately surrounding the Commonwealth's premises includes a local hospital, one college, three high schools, one elementary school and numerous stores and shops. The zoning board

noted in its findings of fact that the Commonwealth sought to locate in a commercial industrial setting, but was unaware that the site was zoned residential. Apparently, the Commonwealth did not know that the above mentioned uses were existing ones which had been granted variances.

Shortly after the Commonwealth applied for the variance, some 450 residents voiced their opposition. The thrust of their objection is that the proposed site adjoins existing parks and that the site should become a part of the parks system.

The biggest area of factual dispute involves the availability of alternative sites to the Commonwealth. The record merely sets forth the testimony presented by the Commonwealth and by the opposing citizen groups. The Commonwealth alleges that the possible alternative sites were not appropriate and concludes that it has no viable alternative sites. The zoning board noted that there existed five other sites alleged to be appropriate where the center could be located.

The legal issue presented to this court is clear.[1]

---

1. Also placed before the court was the issue of the propriety of the denial of the variance. This question requires an examination of the findings of fact and the zoning board's conclusions given the particular zoning classification. See Gro Appeal, 440 Pa. 552, 269 A. 2d 876 (1970); Maple Gardens, Inc. v. Zoning Bd. of Adjustment, 8 Commw. 436, 303 A. 2d 239 (1973). Because this court concludes the zoning board's authority, exercised pursuant to Phila. Code §14-201 et seq., does not extend to the Commonwealth when the Commonwealth acts pursuant to the Mental Health Act, we find it unnecessary to reach this issue and express no opinion concerning it.

Further, we express no opinion as to the adequacy of the record as it exists below or the need to take additional testimony. Durkin Contracting Co. v. Zoning Board of Adj., 6 Commw. 211, 293 A. 2d 622 (1972).

The inquiry is whether the zoning requirements of the City of Philadelphia apply to the Commonwealth when the Commonwealth seeks to act pursuant to the legislative grant of authority contained in the Mental Health and Mental Retardation Act of 1966. The applicability of zoning requirements depends upon an examination in each case of the competing grants of legislative authority, in this case the legislative grant of zoning authority to the City of Philadelphia versus the legislative grant of authority to the Department of Public Welfare of the Commonwealth to effect the purposes of the Mental Health Act, the purposes for which the grants were established and the facts of the individual case. Thus, in this case, this court is faced with the question of whether the Department of Public Welfare can exercise its statutory authority and locate the Sheltered Workshop and Pre-Vocational Center at its chosen site notwithstanding the zoning board's refusal to grant the department a variance permitting such a use at that location. This court concludes that the Commonwealth can so exercise its authority and accordingly the local zoning laws do not apply to the Commonwealth in this case.

In seeking guidance in the resolution of the conflict between these two legislative grants, this court is confronted with three Pennsylvania Supreme Court decisions, none of which yield a clear direction for the resolution of this matter. See Township of S. Fayette v. Com., 477 Pa. 574, 385 A. 2d 344 (1978); City of Pittsburgh v. Com., 468 Pa. 174, 360 A. 2d 607 (1976); Pemberton Appeal, 434 Pa. 249, 252 A. 2d 597 (1969).

In Pemberton Appeal, a Radnor Township School Authority appealed the local zoning board's refusal to grant a variance and permit the school authority to locate the school where it desired. The Pemberton

Court, relying on the Public School Code, codified at 24 P.S. § 1-101 et seq., which provided that "[t]he location . . . of any real estate required by any school district shall be determined by the board of school directors at such district . . . . ", held that the Public School Code prevented the township from applying its zoning ordinances to school districts. Pemberton, supra, 434 Pa. at 255, 252 A. 2d at 599 (1969).

Seven years later, our high court confronted a similar issue in City of Pittsburgh v. Com., supra. In that case, the City of Pittsburgh sought an injunction preventing the Bureau of Corrections of the Department of Justice, which had leased certain property, from using that property as a pre-release center for women convicts. The court, after noting that the two statutory grants were in apparent conflict, set forth the relevant inquiry as including an examination of "the nature of the legislative grant, the purpose for which it was created, [and] the facts of the individual case . . . . " 468 Pa. at 182, 360 A. 2d at 612 (1976). The court reviewed the act the Bureau of Corrections asserted as authority which provided that the Bureau "shall have the power and its duty shall be to establish . . . such pre-release centers at such locations . . . as it may deem necessary . . . . " to implement the act, and concluded that the legislature did not intend the Bureau of Corrections to be immune from local zoning regulations: 468 Pa. at 183, 360 A. 2d at 612 (1976).

The City of Pittsburgh court set forth its reasoning for the above conclusion in footnote 7 to that opinion: 468 Pa. at 183-84 n.7, 360 A. 2d 612 n.7. First, the court stated that there was no indication that the legislature considered how resolution of the present conflict was to be made. Second, the

court noted that, if the site selection was to transcend local zoning laws, the legislature could have expressly stated such, or it could have given the bureau the grant of eminent domain: Act of May 16, 1940, P.L. 949, 36 P.S. §653h, giving the Pennsylvania Turnpike Commission the power to condemn property under the act. Third, the court noted that in prior legislation, the legislature itself made specific provisions for site selection: 468 Pa. at 183-84 n.7, 360 A. 2d 612 n.7. Later in the opinion, the court stated that its conclusion was reinforced since the legislature had explicitly directed that when zoning regulations impose higher standards "than are required in any other statute" those regulations "shall govern." Act of March 31, 1927, P.L. 98, 53 P.S. §25058 (1957).

In Township of South Fayette v. Com., the court had another opportunity to examine conflicting statutes including a statute containing zoning authority. In South Fayette, the court considered the validity of an injunction issued preventing the Commonwealth from operating a treatment unit for juveniles adjudged delinquent. The injunction, issued by the Commonwealth Court, was predicated upon the determination that the Commonwealth's operation of the unit violated local zoning ordinances. The South Fayette court, after noting that, in seeking a preliminary injunction the party's right to relief must be clear, the need for relief immediate and the injury irreparable, concluded that the continuation of the injunction was unsupported by the facts: 477 Pa. at 580, 385 A. 2d at 347. The narrow issue before the court was whether mere use of land by the Commonwealth, in contravention to local zoning ordinances, justified injunctive relief: Id. The court remanded the case to the Commonwealth Court for a complete factual hearing.

In giving guidance to the Commonwealth Court on the resolution of the legal issue of whether the Commonwealth could locate the treatment unit where it proposed, the Supreme Court set forth six factors: 474 Pa. at 581-82, 385 A. 2d at 348. These six factors were as follows: (1) whether the proposed use violated the zoning ordinance; (2) the significance of the Commonwealth's ownership of the property; (3) the parens patriae responsibility the Act places with the Commonwealth; (4) the statutory authority to establish the center for the juveniles; (5) the existence or absence of a "conflict of laws" provision; and (6) the particular circumstances of the case. Id.

It is against this background that this court must consider the applicability of Philadelphia's zoning ordinances to the Department of Public Welfare when the Department of Public Welfare seeks to locate a Sheltered Workshop and Development Center pursuant to the Mental Health Act.

A review of the criteria set forth in City of Pittsburgh v. Com., supra, compels this court to examine the statutes in question in detail.

The Mental Health and Mental Retardation Act was enacted and the Department of Public Welfare given the power and the duty to "assure within the State the availability and equitable provision of adequate mental health and mental retardation services for all persons who need them . . . . " Mental Health and Mental Retardation Act of 1966, Act of Oct. 20, 1966, Spec. Sess. No. 3 P.L. 96, as amended, 50 Pa. Stat. §4101, 4201(1). Further, the Mental Health Act envisions a relationship between the State, through the Department of Public Welfare and Counties in which the State regulates both the Counties' implementation of the program and the Counties' provision of specified services.

See 50 P.S. §4301(a), (d)(1)-(9). The ultimate responsibility, however, rests with the State: 50 P.S. §4201(4).

Critical, for the purposes of the instant case, is Section 4202 which provides for the Department of Public Welfare's operation of all State facilities: 50 P.S. §4202. Section 4202, subsections (a) and (b) provide that:

"(a) The department shall operate all State facilities and shall assign such functions to each as the secretary shall prescribe.

(b) The department is hereby authorized to establish, extend, operate and maintain additional facilities and provide mental health and mental retardation services therein. The department may also lease or otherwise acquire, through the Department of Property and Supplies, other additional facilities."

The Commonwealth contends that Section 4202 (b) gives the Department of Public Welfare the power of eminent domain. Additionally, the Commonwealth argues that Section 4201(4) buttresses this contention. That section provides that the Department of Public Property shall have the power, and its duty shall be:

"(4) To adopt State-wide plans for the operation of all State operated facilities under the jurisdiction of the department and to assign to each facility or portion thereof, such duties for the care of the mentally disabled, as the secretary shall prescribe. The assignments herein referred to shall be made with due regard to geographical location and population distribution." 50 P.S. §4201(4).

On the other hand, this court is confronted with the Philadelphia Code, Sections 14-201 et seq., and the legislative grant of zoning authority to the city. See Act of May 11, 1915, P.L. 285, §14151 et seq.,

53 P.S. § 14751; Act of March 31, 1927, § 8, P.L. 98, 53 P.S. § 14762.

Further, the act giving rise to the City's zoning authority includes the following conflict of laws provision:

"Wherever the regulations made under authority of this Act require . . . or impose other higher standards than are required in any other statute . . . the provisions of the regulations made under authority of this Act shall govern." 53 P.S. § 14762.

The zoning board contends that the statutory grant of zoning authority to the City of Philadelphia, a city of the First Class, coupled with the "conflict of laws provision," which requires the zoning authority to apply in cases of conflicting statutory grants when the zoning provision establishes a higher standard, evinces a legislative intent that the Commonwealth be subject to local zoning laws. Additionally, the zoning board contends that the case of City of Pittsburgh, supra, compels this conclusion.

The critical inquiry in City of Pittsburgh was whether the legislature intended the governmental agency to be immune from local zoning regulations. A problem essentially of statutory interpretation, the City of Pittsburgh court stated that the legislative intent to avoid local zoning laws would be considered "overriding" when the statute contained express language to that effect or when the agency had the power of eminent domain. Because the legislative grant of the power of eminent domain to the Department of Public Welfare evinces the clear intent that local zoning laws be overridden, this court holds that the zoning laws of Philadelphia

cannot prevent the Department of Public Welfare's power to locate the site.[2]

The unequivocal language of Section 4202(b) grants the Department of Public Welfare the power to *"acquire*, through the Department of Property and Supplies, other additional facilities." 50 P.S. §4202(b). (Emphasis added.) The fact that the Department of Property and Supplies is the conduit through which the Department of Public Welfare condemns the property is of no moment. The statute grants the Department of Public Welfare the power of eminent domain.

This court's conclusion is buttressed by the parens patriae nature of the legislative purpose of the Mental Health Act. See Township of South Fayette, supra. See also Haldeman v. Pennhurst State School and Hospital, 446 F. Supp. 1295 (E.D. Pa. 1977), modified, 612 F. 2d 84 (3d Cir. 1979), rev'd and rem. sub. nom., Pennhurst State School v. Haldeman, ____ U.S. ____, 101 S. Ct. ____, 67 L. Ed. 2d 694 (1981). The Pennsylvania Supreme Court in South Fayette placed special emphasis on the nature of the obligation assumed by the state, i.e., the providing of institutional treatment and care of juvenile delinquents. Similarly, in this case, the legislature has assumed the responsibility of providing treatment and care for mentally handicapped adults.

---

2. The City argues, in its brief at page 14, that because the Bureau of Corrections' power, in the City of Pittsburgh case, to select the location of the centers through the Department of Property and Supplies, did not constitute the power of eminent domain in the instant case. Apparently, the city is arguing that the statutes in the Pittsburgh case and the instant case are identical. See City of Pittsburgh, supra, 468 Pa. at 183-84 n. 7, 360 A. 2d 612 n. 7. The city simply misreads the statutes as well as footnote 7 to that case.

This responsibility adds great weight to the court's conclusion that the mental health act gives the Department of Public Welfare the power to locate the center at the proposed site.

## ORDER

Now, March 8, 1982, it is hereby ordered and decreed that because the Commonwealth is not subject to the zoning authority of the City of Philadelphia when it acts pursuant to the Mental Health Act, the decision of the Zoning Board of Adjustment in this matter is reversed.