Sameric Corporation of Market Street *v.* Goss, Appellant.

Argued April 28, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*I. Sidney Sherwin,* with him *Arthur Sonstein,* and *Rosen, Sherwin & Seltzer,* for appellant.

*Michael H. Egnal,* with him *Egnal and Egnal,* for appellee.

OPINION BY MR. CHIEF JUSTICE JONES, October 4, 1972:

On December 25, 1970, the appellee, Sameric Corporation (Sameric), opened a movie theater in downtown Philadelphia called "Mark I." The Mark I Theater exhibits films of a conventional variety intended for general public consumption. In addition to the Mark I theater, Sameric owns and operates approximately forty movie

theaters in and around the metropolitan Philadelphia area. Six months after the opening of the Mark I, appellant, Martin Goss, opened the Mark III Cinema, also in downtown Philadelphia but approximately six blocks from appellee's theater. The Mark III, a so-called "mini-theater" seating about ninety persons, is situated in the rear of Goss' adult book store[1] and exhibits films intended solely for adult viewing.

Appellee filed a complaint in equity on September 21, 1971, seeking a preliminary injunction prohibiting the appellant's use of the name "Mark III." Following a hearing wherein testimony was taken from the President of Sameric, a preliminary injunction was granted enjoining appellant from using the name or title "Mark III" in connection with the exhibition of films in any area where the appellee operates movie theaters. We granted supersedeas and this appeal followed.

The sole question presented for our consideration is the propriety of the issuance of the preliminary injunction. In deciding this issue, our review is limited to the determination of whether any apparently reasonable grounds existed for the action of the court below. *See, Community Sports, Inc. v. Denver Ringsby Rockets, Inc.*, 429 Pa. 565, 240 A. 2d 832 (1968), and the cases cited therein. The reasonableness of issuance of a preliminary injunction is determined by an examination of the facts in light of the conditions which must necessarily exist before the injunction can be granted.

A preliminary injunction should be granted only where (1) the rights of the plaintiff are clear; (2) there is an urgent necessity to avoid injury which cannot be compensated for by damages; and (3) greater

---

[1] The book store had existed at this location for approximately two years prior to the opening of the Mark III Cinema and was known as the "Bookmark" book store.

injury will be done by refusing it than by granting it. *Perloff Bros., Inc. v. Cardonick,* 406 Pa. 137, 176 A. 2d 413 (1962); *Herman v. Dixon,* 393 Pa. 33, 141 A. 2d 576 (1958). *See, also, Pubusky v. D. M. F., Inc.,* 428 Pa. 461, 239 A. 2d 335 (1968), and *Schwab v. Pottstown Borough,* 407 Pa. 531, 180 A. 2d 921 (1962). Our examination of the record fails to convince us that any of these preconditions have been satisfied.

With respect to the first requirement, *i.e.,* the clear right to relief, the briefs of both parties discuss at length the question of appellee's right to protect its goodwill as represented by its trade name. It is conceded that appellee is concerned with maintaining the reputation of its movie theaters and that it does attempt to establish in the public mind an association between its theaters and a certain type of entertainment. However, it appears from a reading of the record that the words "Eric" and "Sameric" and not "Mark I" are the vehicles which convey the appellee's desired image.[2] This conclusion is bolstered by the testimony of the appellee's President, who admitted that to the best of his knowledge no one had inadvertently come to the wrong theater and demanded his money back. While we do not rule out the possibility that a connection between Eric's Mark I and the Mark III Cinema detrimental to the appellee's interests could be shown, it is sufficient for the purpose of this decision

---

[2] The record reveals that the appellee, with few exceptions, identifies its theaters by combining the word "Eric" or "Eric's" with the name of the community in which the particular theater is located, *e.g.,* Eric-Wynnewood, Eric-Chestnut Hill, etc., or with a numeral, *e.g.,* Eric I, Eric II, etc. The record clearly shows that the Mark I is distinctively advertised as "Eric's Mark I" in both the news media and on the theater marquee itself. Even appellee's theaters which are not identified by the word "Eric" are advertised along with appellee's other theaters in a common format labeled as "Sameric Rocking-Chair Theaters."

to state that any connection between the two as demonstrated in the record before us is tenuous at best and falls far short of showing a clear right to relief on the part of the appellee.

Moreover, appellee has failed to show any urgent necessity to avoid an irreparable injury. Indeed, it has failed to show any injury at all. The appellee's own President testified that the two theaters were not in competition and that, while he was not immediately familiar with the gross receipts of all the theaters in the Sameric chain, economically the Mark I was "doing fine." The testimony of the bank officer who approved appellee's loan applications is inconclusive. While he testified that a connection between the Mark III Cinema and the Sameric chain of theaters could possibly have an adverse effect on Sameric's credit, there is no showing that, in fact, appellee was denied credit on this basis. Appellee presented no other evidence concerning economic loss; instead it relied upon an alleged loss of "goodwill." While the loss of "goodwill" may be a proper subject for injunctive relief, the proof of injury offered here is too speculative and conjectural to support a preliminary injunction.

Finally, we feel that the grant of this preliminary injunction will cause greater harm than its refusal. If the chancellor's decree is allowed to stand, then appellant will be forced to rename his theater and replace existing signs and advertisements. If, after a full hearing, a final order is entered dismissing appellee's action, appellant would then be compelled to go through the process of renaming and readvertising once again. Furthermore, appellee has not shown any evidence of damage, either in "goodwill" or pecuniary loss, to date and we will not speculate as to the possibility of future injury in the absence of any evidence to that effect. Balancing the respective interests of the parties, it is

our conclusion that injury to the appellant will far outweigh the benefits to the appellee should the preliminary injunction be allowed to continue until the entry of a final decree.

Accordingly, we hold that the chancellor erred in granting the preliminary injunction on the instant record.

Decree reversed. Appellee to pay costs.

Mr. Justice MANDERINO concurs in the result.

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

Although I concur in the result reached by the majority, I feel its opinion goes far beyond what is required by *Community Sports, Inc. v. Denver Ringsby Rockets, Inc.*, 429 Pa. 565, 240 A. 2d 832 (1968). While the lack of "reasonable grounds" for the preliminary injunction seems apparent, the majority has unnecessarily reviewed the facts in such a light as to virtually foreclose the trial court from deciding whether a permanent injunction should issue.

Notwithstanding the premature factual determination made by the majority on an incomplete record, the trial court should expedite this matter and, on a complete record, make an independent determination of the merits of the case.