## Pennsylvania Dutch Co., Inc. v. Pennsylvania Amish Co., Inc.

*George B. Faller* and *Rod J. Pera,* for plaintiff.

*James D. Flower, James C. McConnon* and *John F. McNulty,* for defendants.

WEIDNER, J., January 16, 1973.—This is a case of unfair competition in which plaintiff seeks preliminary injunctive relief from the alleged unfair trade practices of defendant corporation. Plaintiff has attempted to show a clear right to relief by proving that, in entering the same line of business, defendant has chosen a corporate name and manner of marketing deceptively similar to that already employed by plaintiff, the result of which has been to create a likelihood that consumers will confuse defendant's products with plaintiff's established name and reputation. During the course of litigation, defendant has offered exhibits and depositions into evidence on which this court has reserved ruling for this opinion.

## ADMISSIBILITY OF EVIDENCE

Defendant offers depositions containing statements made by Lincoln Warrell, President of Pennsylvania Dutch Co., Inc., in a prior judicial proceeding. Defendant seeks to introduce the depositions on two theories which this court here affirms: First, as prior admissions against interests by the witness, Warrell, which are relevant to a determination of this litigation, and thereby as substantive evidence; and, second, as prior statements made by Warrell inconsistent with his

testimony in the present action, for impeachment purposes.

It is well-established law in Pennsylvania that a judicial admission may be made in any judicial proceeding, and it is competent as evidence in the same case or in another action: Commonwealth, by Truscott v. Binenstock, 358 Pa. 644 (1948). Admissions against interest clearly and voluntarily made by a party ordinarily possess high evidentiary value and are received on the theory that one would not say anything against his own interest unless it was true.

The depositions in question include testimony by President Warrell relating to the common usage of the term "Pennsylvania Dutch" throughout the food industry, including a disclaimer by Warrell of a protectable interest in the descriptive term "Amish." This is not only relevant to the case at bar, but is in direct contradiction to what this court finds, infra, an element critical to plaintiff's cause of action, clearly an admission against plaintiff's interests in its present claim. As such, these admissions should be admitted as substantive evidence, unless barred by the fact that they are being offered by deposition.

Pennsylvania Rule of Civil Procedure 4020(b) provides for the use of depositions at subsequent trials involving the same subject and parties or their representatives in interest. The Pennsylvania Supreme Court has applied that rule itself in Ryan v. Kirk, 407 Pa. 197 (1962), to allow a deposition taken from Kirk in a prior trial to be introduced into evidence as an admission against his interest, where both Ryan and plaintiff in the prior action were members of the same class in interest and where both litigations revolved around the same subject, an identical situation to that before the court here.

In Ryan, supra, the Supreme Court concluded its ruling by stating:

"We will not restrict the use of a deposition in a subsequent proceeding more than is required by a reasonable interpretation of Pa. R. C. P. 4020(b)."

Applying that same standard, it is clear that the depositions offered by defendant qualify for admission under Rule 4020(b). In the present case, Pennsylvania Amish Co., Inc., seeks to introduce into evidence, as an admission against plaintiff's interest, a deposition taken from an officer of plaintiff company in a prior trial. Pennsylvania Amish is decidedly in the same class as Keppel's, Inc., defendant in the prior case. Pennsylvania Amish, like Keppel's, is being sued by plaintiff for unfair competition in an action involving the right to a protectable interest in the descriptive term "Pa. Dutch" and its complementary promotional motif.

Accordingly, defendant's depositions are admissible as substantive evidence, where relevant to the issues in question, and, as evidence tending to impeach the testimony of plaintiff's witness, Warrell.

Additionally, plaintiff has objected to the admission of defendant's exhibits nos. 1, 2, 5, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, they being a Pennsylvania Dutch recipe book, a food catalogue and candy products distributed by a competing company using the Dutch motif in advertising and labeling. The sole evidentiary value of these exhibits would be to demonstrate how the word "Dutch" and the Dutch motif are used by competing firms, other than Pennsylvania Dutch Co., Inc., and Pennsylvania Amish Co., Inc. Such evidence would tend to disprove exclusive use of those terms by plaintiff.

As averred by plaintiff, proof of secondary meaning synonymous with plaintiff's business, or even proof

of exclusive use of the name "Pennsylvania Dutch" by plaintiff is not required to establish plaintiff's right to relief. Such factors are probative, however, in determining what degree of similarity in name and labeling will cause a likelihood of consumer confusion: Restatement, Torts, §729; see comment g. Since the test for unfair competition is the probability of consumer confusion, defendant's exhibits 1, 2, 5, 13, 14, 15, 16, 17, 18, 19, 20, 21 and 22 are relevant and admissible.

Likewise, plaintiff's claim that defendant's exhibits nos. 27, 28, 29 and 30 bear no relevance to this action must be denied, where the exhibits tend to establish the significance of plaintiff's trademark. Since proof of a legally granted trademark normally attests to exclusive use of the designation by its owner, proof of that trademark would be a material consideration in determining the likelihood of consumer confusion. Evidence tending to qualify plaintiff's trademark by denying such exclusive use, would be of equal relevance, and is, therefore, admissible.

## REQUEST FOR PRELIMINARY INJUNCTION

Plaintiff, in the instant case, seeks the extreme and infrequently granted relief of a preliminary injunction. Alleging unfair competition, plaintiff seeks to enjoin defendant, Pennsylvania Amish Co., Inc., from competing in the candy and food confectionery business under its present corporate name and by way of its currently employed trademarks, names and business practices.

It is clearly established law in Pennsylvania that a preliminary injunction should be granted only where: (1) The rights of the plaintiff are clear; (2) There is an urgent necessity to avoid injury which cannot be compensated for by damages; and (3) Greater injury will be done by refusing it than by

granting it: Sameric Corporation of Market Street v. Goss, 448 Pa. 497 (1972).

Failure to establish any one of these elements will prove fatal to the request for so drastic a remedy.

As will be shown, it is this court's opinion that at least one of the requirements for granting the relief sought has not been established, and the request for such relief must, therefore, be denied.

As to the first requirement, defendants are engaged in a business identical in many respects to plaintiff's. As competition, Pennsylvania Amish offers products similar, or identical, to those offered by Pennsylvania Dutch, by way of similar advertisement, supply and packaging, and to the same consumer population. In short, defendants compete in the same market as plaintiff by way of identical business practices. The task before this court is to determine whether defendant, by using trade name and marketing features similar to those employed by plaintiff, is likely to confuse the public as to the source of the products being offered. In addressing this issue, courts have long recognized the balance to be struck between the public interest in free competition and the protectable interest of the individual business. While a competitor may, subject to· patent, copyright and trademark law, imitate his rival's business, including any unpatented product, protection afforded to competition does not countenance usurpation of a competitor's investment and toil by any representation, however unintentional, that the product offered is that of one's rival: Jessar Manufacturing Corporation v. Berlin, 380 Pa. 453 (1955); accord, Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225 (1964); Compco Corp. v. Day-Brite Lighting, Inc., 376 U.S. 234 (1964).

Defendant depends exclusively on its trade name "Pennsylvania Amish" and mark, a heart-shaped logo,

to distinguish its goods from those marketed by plaintiff. Although plaintiff has, on occasion, utilized the word "Amish" in describing its products, it appears from all relevant testimony that the trade name "Pennsylvania Dutch" not "Amish" and a dutchman's silhouette is the designation by which plaintiff identifies its business.[1] Accordingly, plaintiff's proof must be judged against an objective standard for determining deceptive similarity in names and complementary marketing practices.[2]

Such a standard was offered by Restatement, Torts, §729, and was accepted by the Supreme Court of Pennsylvania in a leading case on the subject of unfair competition, Goebel Brewing Company v. Esslingers, Inc., 373 Pa. 334 (1953), wherein the court listed those considerations to be taken into account in determining whether a competitor's identifying designation is confusingly similar to the trade name or trademark of his rival. These considerations are:

"(a) the degree of similarity between the designation and the trademark or tradename in

"(i) appearance;

"(ii) pronunciation of the words used;

"(iii) verbal translation of the pictures or designs involved;

---

[1] See Sameric Corp. of Market Street v. Goss, 448 Pa. 497, 500 (1972), where the Pennsylvania Supreme Court found the granting of a preliminary injunction to be in error. Based on a comparison of "Eric's Mark I" and "Mark III," plantiff was held to have a protectable interest in the word "Eric" but not "Mark."

[2] All that is necessary is that the court shall find from the evidence that the name, Pa. Amish, or the conduct and practices of defendant actually confused and deceived or that it is reasonably likely that the average purchaser will be deceived; possibility that purchasers will be misled is not enough: Peters v. Machikas, 378 Pa. 52, 58 (1954); citing Koolvent Metal Awning Corp. v. Price, 368 Pa. 528 (1951), and others.

"(iv) suggestion;

"(b) the intent of the actor in adopting the designation;

"(c) the relation in use and manner of marketing between the goods or services marketed by the actor and those marketed by the other;

"(d) the degree of care likely to be exercised by purchasers."

Taking the list in order, there is no similarity of appearance or of pronunciation between the names "Dutch" and "Amish."[3] On point of suggestion, however, the names appear to reach common ground. It has been argued that because the word "Amish" and the word "Dutch" each suggest conformity to a similar, if not identical, ethnic heritage, a corporate individual could claim right to one and, therefore, both by similarity of suggestion. In point of fact, the word "Amish" has a meaning completely distinct from Dutch or German culture, viz., Mennonites of a sect founded in the Seventeenth Century by Jacob Amman.[4] Even preceded by the descriptive word "Pennsylvania" the term is no more descriptive of Dutch heritage than "Pennsylvania Quaker." Lacking any proof that the Pennsylvania Amish are, in fact, of Dutch heritage, no clear similarity can be recognized. Even exact imitation of the word "Dutch" by other food businesses in central Pennsylvania has been recognized by the Pennsylvania Supreme Court as suggesting different

---

[3] Lacking secondary meaning the word "Pennsylvania," as a geographic word, is incapable of exclusive appropriation by anyone. Of the names "Pennsylvania Amish" and "Pennsylvania Dutch," the qualifying words "Dutch" and "Amish" are alone analyzed to determine deceptiveness of similarity; see: Quaker State Oil Refining Co. v. Steinberg, 325 Pa. 273 (1937).

[4] Webster's New International Dictionary, 2d Ed. (1953).

types of ethnic background including Swiss, German, Palatinate Deutsch or that of the Netherlands. Our court has said, "It cannot, therefore, follow irresistibly that everything connected with the central Pennsylvania area which loosely uses the word 'Dutch' must be of one type [background] and not of another": Dutch Pantry, Inc., v. Shaffer, 396 Pa. 102, 106 (1959).

Any suggestive similarity between the terms "Pennsylvania Dutch" and "Pennsylvania Amish" could, at most, be a misconception, and at least a coincidence of purely geographic significance. What suggestive similarity there may be, however engendered, is merely a factor to be considered, along with complete dissimilar meanings, appearance and pronunciation, in determining whether or not there is a confusing effect on the consumer public.

Considering (b) of §729, Restatement, Torts, it seems possible, as averred by plaintiff, that defendant could have chosen the name "Pennsylvania Amish," intending to trade on the established reputation of plaintiff. However, this court sees of equal likelihood the explanation that defendant, like plaintiff, in choosing his name, had no more in mind than drawing significance from the general geographic and ethnic implications of the term chosen. Lack of fraudulent intent being of no exculpatory significance, proof that defendant intended no more than to trade on a reputation belonging to the public is not conclusive to establish or defeat plaintiff's right to injunctive relief.

Pursuant to subsection (c) of §729, Restatement, Torts, what trade name similarity exists must be examined in light of the use and manner of marketing for each company's products. By this comparison is determined what degree of similarity may be tolerated without causing source confusion.

Because plaintiff and defendant companies offer identical candy products, packaged alike, less similarity of name and labeling will lead to confusion than if the competing companies' products were different: Restatement, Torts, §729, see comment g. Additionally, defendant utilizes an unpatented heart-shaped design, as a trademark, to which plaintiff claims exclusive right, as well as display and price listing materials resembling those used by plaintiff. Since the heart shape is a common figure lacking secondary meaning synonymous with plaintiff's business, it is not subject to plaintiff's exclusive appropriation. However, because of its mutual use, greater dissimilarity of trade name is required to prevent source confusion than if the design were utilized by Pennsylvania Amish alone. Defendant's display materials and trade circulars are, in point of fact, comparable in style and format to those employed by plaintiff. Each company's price list features common generic terms descriptive of products offered, and is distinctly capable of being folded as a mailer. Publishing source is identified only by color of background and by individual company name heading at the top of each list.

The total effect of these marketing procedures is to create a situation conducive to consumer confusion, compounding the effect of what trade name similarity exists. Since defendant relies solely on its name to distinguish its goods from those of its rival, a minimum of confusing resemblance to plaintiff's name would establish plaintiff's right to relief.

The ultimate test of whether or not there is a confusing similarity between a designation and a trade name which it is alleged to infringe is the effect in the market in which they are used: Surgical Supply Service, Inc. v. Adler, 321 F.2d 536, 539 (3rd Cir.,

1963), applying Pennsylvania law. Because "Dutch" and "Amish" are not unique names, but words of common usage, descriptive of something other than plaintiff's products, the likelihood that either name acts to identify an established business reputation would depend on what secondary meaning has been developed: Zimmerman v. B. & C. Motel Corp., 401 Pa. 278, 282, 283 (1960). Where such generic terms have acquired no secondary meaning synonymous with plaintiff's business, the probability that a consumer will identify "Pennsylvania Amish" with plaintiff is remote. It has been alleged that even plaintiff's use of its own name "Dutch" is not exclusive throughout the candy business. If this be proven at trial, a natural conclusion would follow that the consumer public is alert to the popular use of the Dutch-related motif, and would be even less likely to confuse "Pennsylvania Amish" with Pennsylvania Dutch Co., Inc., as an individual distributor.

In light of the above considerations, what suggestive similarities existing between the name "Pennsylvania Dutch" and the name "Pennsylvania Amish" have been offered before this court are insufficient to establish a clear likelihood of consumer confusion. Lacking this, plaintiff has failed to establish that clear right to relief necessary to the granting of a preliminary injunction, viz., that defendant is competing unfairly, by representing its products as those of plaintiff, its rival.

## ORDER OF COURT

And now, January 16, 1973, at 9 a.m., accordingly, plaintiff's motion for a preliminary injunction must be overruled and dismissed.