**[J-42A-2024 and J-42B-2024]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**

| | | |
|---|---|---|
| CKHS, INC. AND THE FOUNDATION FOR DELAWARE COUNTY, | : | No. 117 MAP 2023 |
| | : | |
| | : | Appeal from the Order of the |
| Appellants | : | Commonwealth Court at No. 1118 |
| | : | CD 2022 entered on May 3, 2023, |
| | : | Reversing the Lower Court Order of |
| v. | : | the Delaware County Court of |
| | : | Common Pleas, Civil Division at No. |
| | : | CV-2022-007161, entered on |
| PROSPECT MEDICAL HOLDINGS, INC. | : | October 11, 2022. |
| AND PROSPECT CROZER, LLC, AND | : | |
| COMMONWEALTH OF PENNSYLVANIA, | : | ARGUED:  May 15, 2024 |
| | : | |
| Appellees | : | |
| | | |
| CKHS, INC. AND THE FOUNDATION FOR DELAWARE COUNTY, | : | No. 118 MAP 2023 |
| | : | |
| | : | Appeal from the Order of the |
| Appellants | : | Commonwealth Court at No. 1265 |
| | : | CD 2022, entered on May 3, 2023, |
| | : | Reversing the Order of the Delaware |
| v. | : | County Court of Common Pleas, |
| | : | Civil Division, at No. CV-2022- |
| | : | 007161, entered on October 11, |
| PROSPECT MEDICAL HOLDINGS, INC. | : | 2022. |
| AND PROSPECT CROZER, LLC, AND | : | |
| COMMONWEALTH OF PENNSYLVANIA, | : | ARGUED:  May 15, 2024 |
| | : | |
| Appellees | : | |

**OPINION**

**JUSTICE MUNDY**                                          **DECIDED:  January 22, 2025**

We granted allowance of appeal to consider whether the Commonwealth Court properly applied the appellate standard of review in reversing the trial court's order

granting a preliminary injunction to Appellants CKHS, Inc. (CKHS) and The Foundation for Delaware County (Foundation). Because we conclude the Commonwealth Court misapplied the standard of review, and the record contains "apparently reasonable grounds" to support the trial court's order, we reverse the order of the Commonwealth Court and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL HISTORY

Appellants sought a preliminarily injunction to preclude Appellees Prospect Medical Holdings, Inc. and Prospect Crozer, LLC (collectively Prospect) from transitioning Delaware County Memorial Hospital (Hospital) from an emergency and acute care hospital into a behavioral health facility. On January 8, 2016, Prospect acquired the Hospital and other assets from Crozer-Keystone Health System (as Appellant CKHS was known at the time). The parties executed an asset purchase agreement (APA), highlighting the transaction would "support their shared vision to deliver patient-centered, quality care in an efficient, cost-effective and caring manner, meeting the health needs of the community" and expressing their intent to "[c]ontinue the mission and commitment of [Crozer and its members] by providing key services to vulnerable populations, extending community benefits, and supporting medical education[.]" APA, Recitals, at E(i) (R.R. at 738a) (bracketed language added).

To this end, the APA contained a clause obligating Prospect to "preserve key service lines," including "emergency medicine," until at least July 1, 2021 (five years after the APA's effective date), and further requiring Prospect to consult with a local advisory board[1] "in advance of any significant changes in such services . . . after the five (5) year

---

[1] The APA provided the local advisory board "shall be comprised of nine (9) individuals, including local community and physician leaders, four (4) of whom shall be appointed by Crozer's Board of Directors subject to [Prospect's] prior approval, which approval shall not be unreasonably withheld, and four (4) of whom shall be appointed by [Prospect], with
(continued…)

period[.]"  APA § 11.15 (R.R. at 795a-796a).  Additionally, the APA included a clause prohibiting Prospect from closing any of the acquired hospitals before July 1, 2026 (ten years after the APA's effective date), without the approval of the local advisory board and the Foundation.  APA § 11.16 (R.R. at 796a).  Section 14.21 of the APA provided that any breach of the agreement would cause "irreparable damage," as follows:

> The Parties hereto[, *i.e.*, Prospect and Crozer-Keystone Health System,] agree that irreparable damage would occur in the event that any provision of this Agreement is not performed in accordance with its specific terms or is otherwise breached.  It is accordingly agreed that the Parties shall be entitled to an injunction or injunctions (without the need to post bond or other security) to prevent breaches of this Agreement and to enforce specifically the terms and provisions hereof in any court of competent jurisdiction, this being in addition to any other remedy to which they are entitled at law or in equity.

APA § 14.21 (R.R. at 810a) (brackets added).

On September 21, 2022, Prospect announced its intention to convert the Hospital into a behavioral health hospital and contemporaneously notified Delaware County Council and the Hospital's employees that all employees would be fired.  However, Prospect did not get the Foundation's approval.  In response, CKHS and the Foundation filed a breach of contract action against Prospect, which included a request for a permanent injunction to preclude Prospect from closing the Hospital or ceasing its acute care services, and later filed an amended complaint.  CKHS and the Foundation also filed a petition for emergency preliminary injunctive relief, which it amended.  The Office of the Attorney General joined the first amended complaint and the amended petition.

The trial court held an October 7, 2022 hearing on the amended petition, at which Melissa Lyon, the public health director of the Delaware County Department of Health,

---

the remaining member selected by the Foundation from among its Board of Directors to serve as a voting *ex-officio* member."  APA § 11.12 (R.R. at 794a-795a).

was accepted as a local government public health expert. N.T., 10/7/22, at 168, 172. She testified that in her 22 years of public health experience, "whenever an access is removed from a community, it almost always, if not always, negatively impacts those health outcomes for the community." *Id.* at 174. She explained that when a familiar, trusted health care access point is removed from a community, community members have difficulty navigating to different health care systems. *Id.* Based on her experience, she noted that the impact on an elderly or socioeconomically disadvantaged population, such as the one the Hospital currently serves, is greater "because of the barriers that are presented to them, meaning transportation barriers could be an issue, having other health systems accept certain insurance plans. Their ability to have free time in their schedules to access care in different locations could be challenging, so, historically, they will just suffer disproportionately." *Id.* at 175-76. As to whether another hospital in Chester, a few miles away, would have an effect, Lyon opined that there would be challenges navigating a different health system that could result in a delay of care that "almost always results in worsening care, not improved care." *Id.* at 176-78. During cross-examination, Lyon admitted she did not conduct studies, collect data, or obtain a copy of the transition plan from Prospect. *Id.* at 179-80.

On October 11, 2022, the trial court granted preliminary injunctive relief, directing Prospect to essentially maintain the status quo services and operations of the Hospital. In its opinion, the trial court noted that a party seeking a preliminary injunction must establish six prerequisites to obtain a preliminary injunction. Trial Ct. Op., 12/2/22, at 5. Those six prerequisites are as follows:

> (1) the injunction is necessary to prevent immediate and irreparable harm that cannot be compensated adequately by damages; (2) greater injury would result from refusing the injunction than from granting it, and, concomitantly, the issuance of an injunction will not substantially harm other interested parties in the proceedings; (3) the preliminary

> injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct; (4) the party seeking injunctive relief has a clear right to relief and is likely to prevail on the merits; (5) the injunction is reasonably suited to abate the offending activity; and, (6) the preliminary injunction will not adversely affect the public interest.

*SEIU Healthcare Pa. v. Commonwealth*, 104 A.3d 495, 501 (Pa. 2014) (citing *Warehime v. Warehime*, 860 A.2d 41, 46-47 (Pa. 2004)).

Regarding the irreparable harm factor, the trial court noted that the APA contained a provision stating that a breach of its terms would cause irreparable damage. Trial Ct. Op., 12/2/22, at 5-6. Further, the trial court explained that if Appellees ceased providing emergency and acute care services at the Hospital, then "there can be no doubt that in some instances persons presenting at this hospital with the need for acute and/or emergency services would be delayed in receiving these services if they were forced to go to another, more distant, facility." *Id.* at 6. Accordingly, the trial court concluded there would be immediate and irreparable harm that cannot be adequately compensated by monetary damages. *Id.* The trial court further found the other prerequisites to issuing a preliminary injunction were satisfied. *Id.* at 6-7.

Thereafter, Prospect filed a motion to dissolve or stay the preliminary injunction, and the trial court issued a second order on November 2, 2022, denying the motion and clarifying that Prospect was not enjoined from proceeding with its plans, but it was enjoined from implementing the transition. Separately, on November 4, 2022, the Pennsylvania Department of Health ordered Prospect to suspend the Hospital's emergency services and imposed a ban on patient admissions due to inadequate "diagnostic imaging services" at the Hospital. Prospect appealed both trial court's orders to the Commonwealth Court. The Commonwealth Court stayed the October 11 order granting the preliminary injunction but instructed Prospect "to use good faith reasonable

efforts to staff the Hospital in order to lift the Department of Health's suspension of emergency services and patient admissions." Cmwlth. Ct. Order, 12/8/22, at 2.

Thereafter, in an unpublished 2-1 memorandum opinion, the Commonwealth Court reversed the October 11 order and dismissed as moot the appeal of the November 2 order. *CKHS, Inc. v. Prospect Med. Holdings, Inc.*, Nos. 1118 C.D. 2022, 1265 C.D. 2022, 2023 WL 3221623, at *1 (Cmwlth Ct. May 3, 2023). Relevant to this appeal, Prospect challenged the trial court's finding of irreparable harm. Like the trial court, the Commonwealth Court explained that a moving party must establish six prerequisites to obtain a preliminary injunction, one of which is irreparable harm, and the failure to establish any one of them is fatal. *Id.* at *5 (quoting *SEIU Healthcare*, 104 A.3d at 501). Additionally, the court noted that appellate review of an order granting or denying a preliminary injunction is highly deferential as appellate review is limited to only whether the record contains "any apparently reasonable grounds" to support the lower court's decision without reviewing the merits. *Id.* (quoting *SEIU Healthcare*, 104 A.3d at 501). Due to the level of deference, an appellate court does not "pass upon the reasons for or against such action unless it is plain that no such grounds existed or that the rules of law relied on are palpably wrong or clearly inapplicable." *Id.* (quoting *Credit All. Corp. v. Phila. Minit-Man Car Wash Corp.*, 301 A.2d 816, 818 (Pa. 1973)).

The Commonwealth Court first held that the irreparable harm clause of the APA alone was insufficient to satisfy the irreparable harm prong of the preliminary injunction standard. *Id.* at *6. Finding the issue to be one of first impression, the Commonwealth Court held contractual clauses alone are insufficient to establish irreparable harm and at most can "constitute persuasive guidance regarding the existence of irreparable harm," which is the majority position of other jurisdictions. *Id.* at *6-*7. However, the court explained this discussion was "more of an academic point" because the trial court did not

rely solely on the APA clause but considered it as one factor in its finding of irreparable harm and thus did not abuse its discretion on this point. *Id.* at *7.

Nonetheless, the Commonwealth Court held the trial court abused its discretion by finding Prospect's plan to stop providing acute care services at the Hospital constituted irreparable harm because "the *existing* record is devoid of concrete evidence that would support Common Pleas' determination[.]" *Id.* at *8 (emphasis in original). The court stated that a moving party must supply "actual proof of irreparable harm" in the form of "concrete evidence" and not "speculation and hypothesis." *Id.* (quoting *Summit Towne Ctr., Inc. v. Shoe Show of Rocky Mount, Inc.*, 828 A.2d 995, 1002 (Pa. 2003)). To evaluate whether the record supported the trial court's finding that Prospect's plan would endanger the community members' ability to receive timely emergency medical services irreparably harming their health and lives, the Commonwealth Court examined the testimony of Lyon, who was Petitioners' only witness on this point. *Id.* at *8-*10 (quoting Lyon's testimony). The court found "all of Lyon's statements, insofar as they relate to how the local community will be affected if acute care services are no longer offered at County Hospital, are couched in terms that are hypothetical, generalized, and speculative, rather than ones buttressed by specific data or information." *Id.* at *10. Accordingly, the Commonwealth Court held the trial court abused its discretion because it did not have any apparently reasonable grounds to issue a preliminary injunction, reversed the October 11 order, and dismissed as moot Prospect's challenge to the November 2 order.

Judge McCullough filed a concurring and dissenting opinion in which she agreed with the majority that the APA provision alone could not establish irreparable harm but disagreed with the conclusion that Appellants' evidence was insufficient to show irreparable harm. *Id.* at *11 (McCullough, J., concurring and dissenting). Judge McCullough explained that from the record the trial court "reasonably could have

concluded that, at the very least, patients will not have access to the same services at the same locations and will have to re-orient to new, unfamiliar facilities" due to Prospect's plan to close the Hospital's emergency room and cease providing acute care services. *Id.* at *12. Lyon's testimony supported this conclusion and, in Judge McCullough's view, was not so hypothetical or generalized as to preclude the trial court's reliance upon it. *Id.* The dissent noted that Lyon "testified that changes like those proposed by [Prospect] always, or almost always, negatively impact health outcomes in a community because patients must adjust away from familiar, regularly-used facilities to others that are less familiar and less able to provide logistical services for elderly or socioeconomically disadvantaged patients." *Id.* Further, Judge McCullough acknowledged that Lyon did not offer "specific data," but the majority's criticism of her testimony required too much as "the very purpose of preliminary injunctive relief permits harm evidence that is less precise." *Id.* at *13. (noting that irreparable harm is inherently speculative). Accordingly, Judge McCullough opined the evidence was sufficient to support a preliminary injunction, and she would have proceeded to consider the five remaining preliminary injunction factors. *Id.*

## II. ISSUE AND STANDARD OF REVIEW

This Court granted review and rephrased the issue as follows:

> Whether, in an issue of statewide importance, the Commonwealth Court erred when it disregarded this Court's express direction to apply a "highly deferential" standard of review and, substituting its judgment for that of the trial court, overturned an emergency preliminary injunction—entered on a record not yet fully developed—on the grounds that there was insufficient evidence of irreparable harm, where the harm to the local community when Appellees closed their only local hospital was stipulated in the parties' contract, proven by the testimony of record, and palpable on the face of the record?

*CKHS, Inc. v. Prospect Med. Holdings, Inc.*, 309 A.3d 690 (Pa. 2023) (per curiam).

Appellate courts review an order granting or denying a preliminary injunction to determine whether the trial court abused its discretion.[2] *Summit Towne Ctr.*, 828 A.2d 995, 1000 (Pa. 2003). Pursuant to this standard of review, "we do not inquire into the merits of the controversy, but only examine the record to determine if there were any apparently reasonable grounds for the action of the court below." *Id.* (quoting *Roberts v. Bd. of Dirs. of Sch. Dist.*, 341 A.2d 475, 478 (Pa. 1975)). An appellate court will not interfere with the trial court's order unless it is clear that "no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied[.]" *Id.* (quoting *Roberts*, 341 A.2d at 478 (Pa. 1975)). At the preliminary injunction stage, appellate review is necessarily highly deferential as this Court has explained:

> It is somewhat embarrassing to an appellate court to discuss the reasons for or against a preliminary decree, because generally in such an issue we are not in full possession of the case either as to the law or testimony—hence our almost invariable rule is to simply affirm the decree, or if we reverse it to give only a brief outline of our reasons, reserving further discussion until appeal, should there be one, from final judgment or decree in law or equity.

*Hicks v. Am. Nat. Gas Co.*, 57 A. 55, 55-56 (Pa. 1904).

### III. IRREPARABLE HARM

### A. PARTIES' ARGUMENTS

Reiterating the deferential standard of appellate review, Appellants argue that we should reverse the Commonwealth Court. Appellants maintain the trial court's decision was reasonable and supported by the record as "the closure of the only acute care facility in an economically challenged community will cause irreparable harm to the public." Appellants' Br. at 24. Appellants note that Lyon testified that in her 22 years of

---

[2] "[T]he scope of review in preliminary injunction matters is plenary." *Warehime v. Warehime*, 860 A.2d 41, 46 n.7 (Pa. 2004).

experience, when health care access is removed from a community "it almost always, if not always, negatively impacts those health outcomes for the community." *Id.* at 25 (quoting N.T., 10/7/22, R.R. 673a). Further, Appellants highlight that Prospect's CEO, Anthony Esposito, testified that the Hospital was necessary to the community. *Id.* at 25-26. Appellants contend the Commonwealth Court erred in (1) disregarding the highly deferential standard of review and (2) misstating that preliminary injunctive relief requires concrete evidence and specific data when this Court has never required such proof.

Disputing the Commonwealth Court's demand for concrete evidence, Appellants explain there must be a "reasonable certainty" of future harm that is not speculative. *Id.* at 28 (citing *Eckels v. Weibley*, 81 A. 645 (Pa. 1911)). Appellants note that the Commonwealth Court relied on *Summit Towne* as support for its requirement of concrete evidence buttressed by specific data, but Appellants argue *Summit Towne* did not contain that requirement. *Id.* at 29. While Appellants acknowledge that *Summit Towne* used the phrase "concrete evidence," they maintain it was in the context of its conclusion that irreparable harm cannot be based "almost entirely on speculation and hypothesis." *Id.* at 30 (quoting *Summit Towne Ctr.*, 828 A.2d at 1001-02). Appellants also note that the *Summit Towne* Court reversed the Superior Court because that court substituted its judgment for that of the trial court, which Appellants view as consistent with the highly deferential appellate standard of review. *Id.* at 31.

Further, Appellants argue the Commonwealth Court's requirement of concrete evidence is problematic because concrete evidence can be presented only after the status quo has been altered, whereas the purpose of preliminary injunctive relief is to prevent alteration of the status quo. *Id.* at 33. In Appellants' view, this makes obtaining a preliminary injunction impossible because "[p]arties cannot wait for irreparable harm to

occur so that it can be documented and measured before seeking the very remedy necessary to prevent it." *Id.* at 34.

Lastly, Appellants highlight that the parties stipulated in Section 14.21 of the APA that closing the Hospital would cause irreparable harm. *Id.* Appellants contend that the stipulation was entitled to more weight than the Commonwealth Court gave it because here there were no ascertainable money damages, unlike the cases upon which the Commonwealth Court relied. Appellants maintain "[t]here is no reason why a stipulation of irreparable harm, where no monetary damages exist, cannot take the place of proof of irreparable harm, or at the very least weigh in favor of finding irreparable harm." *Id.* at 36. For these reasons, Appellants ask us to reverse the Commonwealth Court, reinstate the preliminary injunction, and remand for further proceedings.[3]

In contrast, Appellees argue we should affirm the Commonwealth Court because Appellants failed to support their request for injunctive relief with non-speculative, concrete evidence. Appellees maintain that *Summit Towne* requires concrete evidence of harm, including data, and not mere speculation and hypothesis. Further, Appellees contend our Court has always required actual proof of irreparable harm, discussing *Sameric Corp. of Market Street v. Goss*, 295 A.2d 277 (Pa. 1972); *South Fayette Township v. Commonwealth*, 385 A.2d 344 (Pa. 1978); *New Castle Orthopedic Associates v. Burns, 392 A.2d 1383* (Pa. 1978); and *Novak v. Commonwealth*, 523 A.2d 318 (Pa. 1987). Synthesizing those cases, Appellees assert "this Court has consistently demanded 'facts' (*Sameric*), 'actual proof' (*New Castle*), and 'concrete evidence' (*Summit*) in support of a preliminary injunction, and has rejected 'speculation' (*Novak*, *Summit*), discarded evidence of limited relevance (*South Fayette*), and has reversed

---

[3] By letter, the Office of Attorney General notified our Court that it declined to file a brief because it fully agrees with Appellants' legal position.

injunctions *even under the deferential standard of review*." Appellees' Br. at 37-38 (emphasis in original).

Lyon's testimony was insufficient, in Appellees' view, because it was speculation regarding the general consequences of a hospital's closure and not based on any data regarding Delaware County or the Hospital, and Lyon did not review the transition plan. *Id.* at 42-43. Additionally, Appellees note that reading Esposito's testimony as a whole shows his stance was that the transition was necessary to prevent the Hospital's closure and provide behavioral health services that the community needed. *Id.* at 44. Further, Appellees note that the Hospital has not provided emergency care services for over a year since the Commonwealth Court stayed the injunction pending appeal in December 2022, and Appellants have not sought a new injunction based on new facts or sought to expedite the permanent injunction hearing. *Id.* at 45. In Appellees' view, this proves the Commonwealth Court correctly concluded no irreparable harm resulted from Appellees' decision to transition the Hospital's services from acute care to behavioral health.

Moreover, Appellees maintain the Commonwealth Court correctly concluded that the APA's irreparable harm provision is not controlling. As it is an "academic point," Appellees first contend we do not need to consider the APA. *Id.* at 46. However, even if we reach it, Appellees agree with the Commonwealth Court's adoption of the majority position that contractual provisions are, at most, persuasive guidance on irreparable harm. *Id.* Appellees submit that giving contractual provisions more weight "would permit private parties to usurp a court's equitable powers, even though those equitable powers are intended to be used to enjoin a party only when it is in the public interest to do so."

*Id.* at 46-47.[4]  For these reasons, Appellees ask us to affirm the Commonwealth Court's reversal of the preliminary injunction.

In their reply brief, Appellants maintain that to meet the irreparable harm element this Court has required only proof of an apprehended injury, reasonably certain to occur, not concrete or actual proof of irreparable harm.  Appellants' Reply Br. at 6.  They claim the cases Appellees cited "stand for the unremarkable proposition that irreparable harm cannot be based entirely on speculation in the absence of any evidence at all that injury is reasonably certain to occur."  *Id.*  Specifically, in *Sameric*, Appellants point out that the plaintiff's president admitted that no harm had occurred and the plaintiff's business was unaffected.  *Id.*  Similarly, in *South Fayette*, the plaintiff's only evidence was based on examples from different locations than the defendant occupied and from years before.  *Id.* at 7.  Likewise, in *New Castle*, the plaintiff's president testified that its business was unaffected, and the pool of available clients exceeded the plaintiff's capabilities to serve them.  *Id.*  Lastly, in *Novak*, the plaintiff's concerns were entirely speculative, and the plaintiff had remedies at law.  *Id.* at 8.

Appellants distinguish this case from those cases, in that the evidence in this case showed the injury was reasonably certain to occur, and they maintain we should reverse the Commonwealth Court.  *Id.*  Lyon's testimony, in Appellants' view, constitutes

---

[4] Appellees also offer an alternative basis for affirmance, arguing the trial court misinterpreted the APA.  Appellees argue that in addition to failing to demonstrate irreparable harm, Appellants also failed to show that it was likely to prevail on its breach of contract claim.  Appellees' Br. at 48.  Appellees submit that the APA permits Appellees to change and transition services within its hospital system without consent after 5 years.  *Id.* at 53.  Here, Appellees point out that they are not closing the Hospital premises but changing/expanding its services to include behavioral health.  Further, the APA does not mandate that specific services be offered at particular properties but gives Appellees the discretion to ensure access to services in Delaware County.  Because the transition to a different type of service is not a closure, Appellees argue Appellants are unlikely to prevail on their contract claim.

apparently reasonable grounds to support the preliminary injunction. *Id.* at 10. Appellants rebuff Appellees' criticisms of Lyon's testimony by noting that the emergency nature of preliminary injunction proceedings did not permit studies or models. *Id.* Additionally, Appellants note that any study would be incapable of meeting Appellees' "concrete evidence" standard because at this stage studies could predict only what is likely to occur. *Id.* at 11. Regardless, Appellants maintain that the record contains apparently reasonable grounds to support the trial court's order. *Id.* at 12.

In response to Appellees' argument that a stipulation to irreparable harm usurps a trial court's equitable powers, Appellants point out that irreparable harm is one of the six factors a party must prove for a preliminary injunction, and even with a stipulation, a court is always the final arbiter. *Id.* at 15. Appellants maintain a stipulation to irreparable harm is appropriate in this case because the harm of depriving a community of a local acute care hospital cannot be precisely proven or adequately compensated for in damages. *Id.* Appellants argue that the Commonwealth Court erred in giving no weight to the stipulation of irreparable harm. *Id.* at 16.[5] Therefore, Appellants assert the trial court had apparently reasonable grounds to grant the preliminary injunction.

## B. ANALYSIS

A preliminary injunction is a temporary remedy with the purpose "to preserve the status quo as it exists or previously existed before the acts complained of, thereby preventing irreparable injury or gross injustice" until the trial court can conduct further proceedings to resolve the underlying merits of the case. *Maritrans GP Inc. v. Pepper,*

---

[5] Addressing Appellees' alternative reason for affirmance, Appellants argue the trial court properly found they are likely to prevail on their claim that Appellees breached the APA. Appellants' Br. at 16. Appellants note at the preliminary injunction stage, they needed to demonstrate only that "substantial legal questions" exist. *Id.* Appellants argue they met this standard because the APA's unambiguous language precludes Appellees from closing the Hospital as an acute care facility without the Foundation's consent, relying on the trial court's reasoning. Id. at 17-20.

*Hamilton & Scheetz*, 602 A.2d 1277, 1286 (Pa. 1992) (emphasis removed). As set forth above, the moving party has the burden to establish "six essential prerequisites" to obtain preliminary injunctive relief. *SIEU Healthcare*, 104 A.3d at 501. Here, we focus on the requirement "that the injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages," as the Commonwealth Court reversed the trial court's order granting preliminary injunctive relief based on Appellants' failure to produce evidence sufficient to prove that element. *Id.* Our Court has noted that a party moving for a preliminary injunction has a "threshold evidentiary requirement" to show "actual proof of irreparable harm." *New Castle Orthopedic Assocs. v. Burns*, 392 A.2d 1383, 1387 (Pa. 1978) (plurality). A harm is regarded as irreparable when it "will cause damage which can be estimated only by conjecture and not by an accurate pecuniary standard." *Anchel v. Shea*, 762 A.2d 346, 351 (Pa. Super. 2000).

The standard of review of a trial court's order granting or denying an injunction requires an appellate court to examine the record to decide whether there were "any apparently reasonable grounds" for the trial court's order. *Summit Towne*, 828 A.2d at 1000. In this regard, our Court's decision in *Summit Towne* is instructive. The *Summit Towne* Court held the Superior Court erred in reversing the trial court's denial of a preliminary injunction because it misapplied the appellate standard of review. In that case, Summit Towne's lease agreement with the tenant, Shoe Show, provided Shoe Show would not abandon the leased retail premises during the 10-year lease period and contained a liquidated damages clause for breaches of the lease. *Id.* at 998. Shoe Show eventually vacated the leased premises because its business was commercially unsuccessful, and Summit Towne sought a preliminary injunction to compel Shoe Show to reopen its store on the basis that Summit Towne's shopping center would suffer a "domino effect" of harm when a tenant vacates its store. *Id.* at 999. The trial court denied

Summit Towne's petition for a preliminary injunction, concluding that Summit Towne did not prove immediate and irreparable harm, that it had an adequate remedy at law, and that an injunction would disproportionately harm Shoe Show. *Id.* The Superior Court, however, reversed because Shoe Show's vacancy caused "real and immeasurable" harm to Summit Towne's "tenant diversity, credibility, ability to lease units at the Centre, and ability to enforce its current lease agreements." *Id.* at 1000.

Our Court reversed the Superior Court because the trial court had "apparently reasonable grounds" to deny the preliminary injunction, and the Superior Court misapplied the appellate standard of review. *Id.* at 1002. Specifically, we explained that the record supported the trial court's conclusion that Summit Towne failed to show irreparable harm because its only witness's testimony "rested almost entirely on speculation and hypothesis, as he provided no concrete evidence of harm such as data relating to other stores' lost sales, decreased retention rates, or increased vacancy rates." *Id.* Further, we found the record supported the trial court's conclusion that Summit had adequate remedies at law "because Summit failed to substantiate, through business records, expert testimony, or otherwise, its claim that damages would not provide an adequate or complete remedy to Summit." *Id.* at 1003. Additionally, this Court explained that the Superior Court misapplied the standard of review: "instead of examining the record for 'any apparently reasonable grounds' in support of the trial court's decision, the Superior Court appears to have undertaken an independent review of the record and decided that [the witness's] testimony was entitled to more weight than that which the trial court accorded it." *Id.* at 1004. Consequently, the *Summit Towne* Court concluded "as the Superior Court's reweighing of the testimony and independent credibility findings demonstrate its plain violation of the applicable standard of review, we must set aside the Superior Court's decision." *Id.* at 1005.

*Summit Towne* thus stands for the proposition that appellate review of a trial court's order granting or denying preliminary injunctive relief must be highly deferential to the trial court and conducted to discern whether there are "any apparently reasonable grounds" to support the trial court's order. We conclude that the record in this case, viewed through the appropriate standard of review, contains apparently reasonable grounds to support the trial court's decision to issue a preliminary injunction. Appellees undisputedly planned to cease providing emergency and acute care services at the Hospital and transition the Hospital to a behavioral health facility that would not provide those services. Appellants presented actual proof of irreparable harm through Lyon's expert testimony. Her testimony, based on her 22 years of public health experience, was that removing healthcare access from a community "almost always, if not always, negatively impacts those health outcomes for the community." N.T., 10/7/22, at 174. This is because community members have difficulty navigating from familiar, trusted healthcare systems to different ones. *Id.* The negative health outcomes disproportionately affect socioeconomically disadvantaged and elderly populations, *i.e.*, the populations the Hospital currently serves. *Id.* at 175-76. The challenges presented by navigating to a different hospital even a few miles away risks delaying care and "almost always results in worsening care, not improved care" in Lyon's view. *Id.* at 178. Lyon's testimony provides apparently reasonable grounds to support the trial court's conclusion that Appellees' plan to cease providing emergency and acute care services at the Hospital would result in a delay of care. Accordingly, the trial court did not abuse its discretion in finding Appellants showed irreparable harm by presenting evidence of damage to the health outcomes of the community that is incapable of adequate protection by monetary damages, and the Commonwealth Court erred by not recognizing these apparently reasonable grounds that supported the trial court's order.

Moreover, Section 14.21 of the APA, stating that the parties agreed "irreparable damage" would result from a breach of its terms, buttresses the trial court's finding of irreparable harm. This shows that the parties, which were sophisticated commercial entities, recognized that departing from the APA's terms would result in irreparable damage. The parties' agreement in this respect was confirmed by the Lyon's testimony. We agree with the Commonwealth Court and Appellees that a contractual provision alone cannot compel a court to issue injunctive relief. Initially, while the issue of the effect of a contractual provision stipulating to irreparable harm in the event of a breach appears to be an issue of first impression, our courts have long recognized that "[i]t is not the initial breach of a covenant which necessarily establishes the existence of irreparable harm but rather the threat of the unbridled continuation of the violation and the resultant incalculable damage . . . that constitutes the justification for equitable intervention." *John G. Bryant Co., Inc. v. Sling Testing & Repair, Inc.*, 369 A.2d 1164, 1167 (Pa. 1977). According to this principle, irreparable harm is not the result of a breach of a contract itself, but it is a result of the nature of the breach and its ongoing effects. Because at the time of entering a contract the parties typically cannot know the nature of future breaches and their consequences, a party moving for an injunction based on a breach of contract still must carry its burden to show irreparable harm as a result of the breach. *See First Health Grp. Corp. v. Nat'l Prescription Adm'rs, Inc.*, 155 F. Supp. 2d 194, 234-35 (M.D. Pa. 2001).

Ultimately, issuing injunctive relief is an equitable power reserved to the trial court's discretion, and parties to a contract may not direct the trial court to exercise its discretion to issue an injunction when it would not be warranted by law.[6] Nonetheless, it is not an

---

[6] Appellants do not raise any challenge in equity or contract law to Appellees' decision to take a position in court regarding the existence of irreparable harm that was contrary to (continued…)

abuse of the trial court's discretion to consider the parties' contractual agreement as evidence of how they understood the significance of potential anticipated breaches at the time they made their agreement and weigh their agreement in favor of finding irreparable harm. This is the position of many federal courts that have considered the issue. *See, e.g.*, *Dice v. Clinicorp, Inc.*, 887 F. Supp. 803, 810 (W.D. Pa. 1995) ("Although [] a contractual provision may constitute evidence in support of a finding of irreparable harm, the mere inclusion of the contractual provision cannot act as a substitute for the requisite showing of irreparable harm."). Notably, the Commonwealth Court also concluded that the parties' contract may provide persuasive evidence of irreparable harm, but then did not factor Section 14.21 of the APA into its analysis.

Based on the foregoing, we hold the Commonwealth Court erred in misapplying the standard of review as set forth in *Summit Towne*. Again, appellate review of a trial court order granting a preliminary injunction must be highly deferential to the trial court's exercise of discretion and must be affirmed when the record contains "apparently reasonable grounds" to support the trial court's decision. After acknowledging this standard of review, the Commonwealth Court then relied on *Summit Towne* alone as containing a requirement that in all cases "a petitioner is tasked with offering 'concrete evidence' in support of their claims, not mere 'speculation and hypothesis.'" *CKHS*, 2023 WL 3221623, at *8 (quoting *Summit Towne*, 828 A.2d at 1002)). However, *Summit Towne* did not broadly impose this heightened evidentiary burden for preliminary injunction cases. Instead, *Summit Towne* contained these statements in the context of instructing the intermediate appellate court to conduct a deferential review of the trial court's decision. Because the trial court in that case had denied preliminary injunctive relief, a

---

Section 14.21 APA. Consequently, we do not reach this issue as Appellants have not raised it.

proper application of the appellate standard of review was to determine whether the record contained "any apparently reasonable grounds" to support the trial court's action, and the *Summit Towne* Court concluded the record supported affirming the trial court because the evidence was speculative, hypothetical, and not concrete. Here, in contrast, the trial court granted a preliminary injunction, and the standard of review requires affirmance if there are any reasonable grounds to support the trial court's decision. Like the Superior Court in *Summit Towne*, the Commonwealth Court in this case erred in reweighing the testimony instead of determining whether the trial court had any reasonable grounds to issue the injunction. The trial court concluded Appellees' plan to discontinue emergency and acute care services at the Hospital would result in a delay of care, which cannot be adequately compensated by money damages, and Lyon's expert testimony combined with the APA's irreparable damage provision provides actual proof of this irreparable harm. Accordingly, the trial court had reasonable grounds to issue a preliminary injunction, and the Commonwealth Court erred by creating a new evidentiary standard and misapplying the standard of review.

Moreover, Appellees' attempt to support the Commonwealth Court's "concrete evidence" standard by citing to *Novak*, *New Castle*, *Sameric*, and *South Fayette*, decisions that predate *Summit Towne*. Appellees' argument is unavailing because these cases are inapt and distinguishable. Specifically, in *Novak*, a direct appeal, this Court reversed a Commonwealth Court order granting a preliminary injunction to district lottery representatives of the Pennsylvania State Lottery, Department of Revenue precluding the Commonwealth from furloughing them until their grievance proceedings were resolved. Our Court framed its discussion by explaining that governmental employment is not a per se right, and government agencies have a strong interest in preserving their management prerogatives. *Novak*, 523 A.2d at 319-20. The *Novak* Court reasoned that the

employees' harms were speculative, but the interference with the government's management function was certain. *Id.* at 320. Our Court characterized the furloughed employees' hardships as speculative and highlighted that our Court has found "losses arising from termination of employment have not been providing a basis for a finding of irreparable harm." *Id.* Further, the *Novak* Court explained that the employees' position was the same as any other employees whose employment had been terminated, and injunctive relief is not typically available in employment disputes because monetary damages and administrative remedies are adequate to compensate any losses. *Id.* at 321.

*Novak* is distinguishable from this case as it was specific to termination of employment cases. Relying primarily on the principle that losses from termination of employment are not irreparable because the harms may be remedied by monetary damages or administrative proceedings, it did not otherwise discuss how the employees' harms were speculative. Here, in contrast, the injury from the closure of the Hospital is incapable of monetary calculation or administrative remedy. Further, the trial court in this case had apparently reasonable grounds to conclude the harm was irreparable based on Lyon's testimony and the parties' contract.

In *New Castle*, a doctor allegedly violated a noncompete provision in his employment contract with an orthopedic association. *New Castle*, 392 A.2d at 1384. The trial court granted a preliminary injunction to the orthopedic association to enforce the noncompete, and the Superior Court affirmed. *Id.* In reversing the Superior Court, this Court explained the record did not contain evidence that the orthopedic association had incurred financial loss from the doctor's competing practice because the trial court did not permit its introduction, and the president of the association testified that the association's patient count did not change because of the competition. *Id.* at 1386. Additionally, the

record showed the association could not treat the number of patients referred by other physicians, and there was a shortage of orthopedic doctors in the county. *Id.* at 1387. The *New Castle* Court further explained that "the threshold evidentiary requirement that must be met before a preliminary injunction may be issued[ is] actual proof of irreparable harm," even if the harm is monetarily small. *Id.* (discussing *Herman v. Dixon*, 141 A.2d 576 (Pa. 1958), and *John G. Bryant Co.*, 369 A.2d 1164 (Pa. 1977)). *New Castle* thus reversed because the record showed there was no harm to the orthopedic association, which is different from this case where the record contains Lyon's testimony providing an apparently reasonable basis for the trial court's finding of irreparable harm.

Similarly, in *Sameric*, our Court reversed the trial court's grant of a preliminary injunction precluding the appellant from calling its adult film theater "Mark III" when the appellee had opened a movie theater named "Mark I" six months earlier. *Sameric*, 295 A.2d at 278. Regarding irreparable injury, this Court noted the appellee "failed to show any injury at all" because the Mark I president had testified the two theaters were not in competition and its theater was economically unaffected. *Id.* at 279. Further, our Court noted there was no evidence that appellee was denied credit due to any perceived connection between the two theaters. *Id.* Additionally, our Court explained that the proof of appellee's alleged loss of "goodwill" was "to[o] speculative and conjectural to support a preliminary injunction." *Id.* Unlike the appellee in *Sameric*, who did not introduce evidence to support the allegations of lost goodwill, Appellants in this case presented evidence to substantiate their claim of irreparable harm.

Lastly, in *South Fayette*, our Court reversed in a direct appeal the Commonwealth Court's grant of a preliminary injunction to South Fayette Township, directing the Commonwealth to cease operating an intensive treatment facility for juveniles who had been adjudicated delinquent. *South Fayette*, 385 A.2d at 345. Our Court found the

township's evidence of irreparable harm related to juveniles who had escaped from the facility when the property was operated by two different prior private owners, before the Commonwealth acquired the facility and implemented a security program. *Id.* at 348. The township's only other evidence related to escapes from a facility in another county with different security and overcrowding. *Id.* On the other hand, the Commonwealth's competing evidence showed that its facility held fewer juveniles, had better security measures, and a review of a nearly identical facility showed no escapes. *Id.* at 349. This led our Court to conclude that the township failed to show irreparable harm because the "Township's sole proof of anticipated injury was evidence of incidents occurring months and years before the hearing at facilities operated under different circumstances than the Commonwealth's present operation[.]" *Id.* This Count found "[s]ince all the most relevant evidence established that [the facility] was secure, and [the township] made no showing of the problems complained of presently exist, [the township] did not establish a clear right to relief." *Id.* Our Court added that complying with the preliminary injunction would irreparably harm the Commonwealth by vacating the facility and transferring the juveniles it housed. *Id.* (concluding "[t]he combination of the uncertainty of [the township's] right to relief and the absence of a showing of immediate and irreparable harm forcefully militates against issuance of a preliminary injunction, particularly in light of the mandatory nature of some of its provisions."). While *South Fayette* involved competing evidence, the record in this case contains only evidence in support of the trial court's finding of irreparable harm. Further, as Lyon is the public health director of the Delaware County Department of Health, she opined as to the effects of removing healthcare access points from a community with which she had 22 years of experience. Additionally, the *South Fayette* Court was looking for "proof of anticipated injury," which is the type of evidence Lyon provided in this case when she testified that removing a healthcare access point

from elderly and socioeconomically disadvantaged communities almost always negatively impacts the healthcare outcomes of the communities. At the preliminary injunction stage, this provides apparently reasonable grounds to support the trial court's issuance of a preliminary injunction to maintain the status quo until it could fully resolve the merits of the case. Further, we disagree with Appellees that *Summit Towne*, *Novak*, *New Castle*, *Sameric*, and *South Fayette* impose a "concrete evidence" requirement for preliminary injunctions.

## IV. CONCLUSION

Based on the foregoing, we conclude that the Commonwealth Court misapplied the appellate standard of review as discussed in *Summit Towne*. Further, we disagree with the Commonwealth Court's evidentiary standard of concrete proof and instead conclude the record contained apparently reasonable grounds to support the trial court's decision to issue a preliminary injunction. Accordingly, we reverse the order of the Commonwealth Court. However, because the Commonwealth Court's opinion addresses only the irreparable harm factor of the six-part test for preliminary injunctive relief, we remand to that court to review the remaining five factors consistent with this opinion.[7]

Chief Justice Todd and Justices Dougherty, Wecht, Brobson and McCaffery join the opinion.

Justice Donohue files a dissenting opinion.

---

[7] Appellees' alternative reason for affirmance argues Appellants were not likely to prevail on the merits. The Commonwealth Court did not address this argument, as it focused solely on irreparable harm. Further, it is outside the scope of the issues upon which we granted review. Accordingly, it should be addressed to the Commonwealth Court on remand.